37 N.J. Super. 451 (1955)
117 A.2d 624
WILLIAM BURKE, ELEANOR BURKE AND WILLIAM BURKE, JR., AN INFANT, BY WILLIAM BURKE, HIS GUARDIAN AD LITEM, PLAINTIFFS-APPELLANTS,
v.
AUTO MART, INC., A CORPORATION OF NEW JERSEY, AND ARTHUR J. MOORE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 1955.
Decided October 27, 1955.
*452 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Robert C. Gruhin argued the cause for plaintiffs-appellants.
Mr. John C. Stockel argued the cause for defendant-respondent Auto Mart, Inc.
*453 The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiffs were the driver of and passengers in a motor car which was involved in a collision on August 23, 1952 with an automobile then operated by the defendant Moore, sold to him by the defendant Auto Mart, Inc. ("Auto Mart" hereinafter) on August 9, 1952. The action is brought to recover for damages to the Burke car and for personal injuries to the occupants. Moore did not answer or defend at the trial. Auto Mart, a used-car dealer in Elizabeth, defended primarily on the ground that it had sold, delivered and received payment for the car prior to the accident and that it had nothing to do with Moore or his operation of the car at the time, whether as principal or in any other connection. But the vehicle bore Auto Mart's dealer registration plates, these having been loaned to Moore to permit his taking delivery on August 9 pending clearance of the title papers through the New York and New Jersey motor vehicle agency offices. Auto Mart had purchased the vehicle, a used car, from a New York dealer August 2, 1952. The New Jersey statutory certificate of ownership of the car did not issue to Auto Mart until September 18, 1952 and it executed the assignment thereof to Moore the next day.
Plaintiffs' contention at the trial was that title to the car was in Auto Mart when the accident occurred and that Moore's operation of it under the circumstances raised an issue for the jury as to whether the presumption of agency and operation on Auto Mart's business, consequent upon the condition of the title and the use of the dealer plates, had been successfully met by that defendant. The trial judge granted a motion for dismissal on its behalf. He stated that he found legal title in Auto Mart and, in effect, equitable title in Moore as of the date of the accident and that the presumption that Moore was the agent of Auto Mart and acting on its business had been rebutted by the proofs submitted by the latter. The jury found against Moore and in favor of the Burkes in various amounts.
Plaintiffs' appeal from the order of dismissal as to Auto Mart was frankly based at the argument primarily on the *454 theory, in substance, that the law should impute a vicarious principal-agent relationship to Auto Mart and Moore in this situation as a matter of public policy, in order to provide an additional sanction against the conceded violations in this transaction of the salutary provisions of our statutes regulating the registration, use and transfer of title to motor vehicles.
Indubitably the loan of the dealer plates to Moore to expedite delivery was in violation of the statute. Such plates may be placed only on a vehicle owned by the dealer and a violation is punishable by a fine not to exceed $100. N.J.S.A. 39:3-18. Upon transfer of ownership the registration of a motor vehicle expires and the seller is required to remove the registration plates and notify the commissioner of the name and address of the purchaser. N.J.S.A. 39:3-30. Every resident of the State whose automobile is driven in this State is required to register it before it is driven on the public highways. N.J.S.A. 39:3-4. In every sale of a used car the seller is to execute and deliver to the purchaser an assignment of the certificate of ownership, N.J.S.A. 39:10-9, and the purchaser, within ten days after purchase, must submit evidence of purchase to the director of the Division of Motor Vehicles. N.J.S.A. 39:10-11. All of these penal requirements were violated in the sale of this car to Moore. N.J.S.A. 39:10-5 provides:
"No person shall sell or purchase any motor vehicle in this state, except in the manner and subject to the conditions provided in this chapter."
What are the consequences of these violations in terms of liability of Auto Mart to plaintiffs for Moore's negligence?
Efforts to hold violators of motor vehicle regulatory statutes for damages for injuries consequent upon the operation of automobiles or to preclude their right of recovery for damages caused by the negligence of others have almost always been rebuffed where no causal relation was discernible between violation and accident. For example, it is the general rule that one is not precluded from recovery by mere *455 reason of operation of a car without a license or of a deficiency in the registration of the vehicle. Annotation, 163 A.L.R. 1375, and earlier annotations cited therein. By the great weight of authority automobile registration statutes create only a public duty and do not render an unlicensed driver or the driver of an unregistered vehicle liable to or without recourse against those with whom he collides if he is otherwise exercising proper care. Prosser on Torts (1941) § 39, pp. 266, 267. Generally and in New Jersey such results are posited on absence of proximate cause between the violation of the statute and the accident. 5 Am. Jur., Automobiles, § 144, p. 588; Muller v. West Jersey & Seashore R.R. Co., 99 N.J.L. 186, 188, 189 (E. & A. 1923); Ross v. Pennsylvania R.R. Co., 106 N.J.L. 536 (E. & A. 1930); Renner v. Martin, 116 N.J.L. 240 (E. & A. 1936). Compare the same approach in the analogous situation of violation of statutory regulations concerning the size of a vehicle. See Formichella v. Layton, 25 N.J. Super. 1, 3 (App. Div. 1953). Prosser points out that the more pertinent rationale is the absence of legislative intent to protect against negligence, but, rather, to subserve entirely different objects (op. cit. supra, pp. 267, 268), as, e.g., preventing theft and traffic in stolen automobiles. See Merchants' Securities Corp. v. Lane, 106 N.J.L. 576, 578 (E. & A. 1930). The limitation of scope of liability implied in such a view has been obliquely criticized. Effect of Penal Statutes on Civil Liability, 32 Columbia L. Rev. 712, 716, 717 (1935). See also, in reference to civil liability arising from operation of an automobile in violation of regulatory statutes, 1 Blashfield, Cyclopedia of Automobile Law and Practice (1948), §§ 591-604, pp. 422-457; 2 Stevenson, Negligence in the Atlantic States (1954), § 679, pp. 1030, 1031.
Massachusetts alone has developed the philosophy that an unregistered or improperly registered motor vehicle is a nuisance and its operator a trespasser on the highway with the corollary that anyone responsible for its presence on the highway is liable for any direct injury resulting from *456 its use, regardless of its foreseeability or the absence of negligence in any other sense. Koonovsky v. Quellette, 226 Mass. 474, 116 N.E. 243 (Sup. Jud. Ct. 1917); DiFranco v. West Boston Gas Co., 262 Mass. 387, 160 N.E. 326 (Sup. Jud. Ct. 1928).
The thus indicated failure of the predominant authorities to equate a statutory motor vehicle violation with negligence proximately causing an injury adumbrates a like conclusion where such a violation is assigned, as here, as a basis for implication of vicarious agency for another in the negligent operator of an automobile (infra). Plaintiffs assert that perforce the statute title remained in Auto Mart when the accident occurred, that a presumption consequently arose that Moore was operating the vehicle in its business at the time and that the presumption finds factual substantiation in the circumstance that the use by Moore of Auto Mart's dealer plates was for its benefit by way of expedition of the sale and, therefore, in effect, constituted his operation a phase of the conduct of its business. By this kind of ratiocination it is argued plaintiffs were entitled to have the jury determine whether Moore was not in fact Auto Mart's agent at the time when his negligence caused their injuries. They make no pretense that Moore was working for or in any other realistic sense in the service of Auto Mart on the day of the accident.
For purposes of analysis of the position taken it may be conceded that the circumstances shown, particularly the use of the license plates, warranted application of the initial presumption invoked. Crowell v. Padolsky, 98 N.J.L. 552 (E. & A. 1923). It is by no means clear, however, that a sale of a car is so void as to preclude passage of equitable title merely because statutory title papers have not been delivered at the moment the bargain is struck or the car is delivered, there being an intent to deliver them. Ethridge v. Allied Equipment & Supply Co., 26 N.J. Super. 586 (App. Div. 1953); Gaub v. Mosher, 3 N.J. Misc. 605 (Ch. 1925); cf. Shinn v. Cohen, 99 N.J. Eq. 418 (E. & A. 1926) and see 9 Rutgers L. Rev. 235 (1954). Nevertheless, *457 giving the plaintiffs the benefit of the presumption of operation of the car in the business of Auto Mart and admeasuring the factual evidence here presented in opposition to the presumption against conventional concepts of the law of agency, plaintiffs are plainly seen to have had no case for the court to present to the jury as against Auto Mart. Tischler v. Steinholtz, 99 N.J.L. 149 (E. & A. 1923); Nicosia v. Marangi, 13 N.J. Super. 550, 554 (App. Div. 1951); cf. In re Weeks' Estate, 29 N.J. Super. 533, 537 (App. Div. 1954). There was direct, uncontradicted and irrefutable proof that Auto Mart had nothing to do with Moore nor he with it at any time after he drove the car off its lot on August 9, except for the formal delivery and acceptance of the assignment of the certificate of title to the car on September 19.
It was held in Patterson v. Surpless, 107 N.J.L. 305 (E. & A. 1930), that even where an owner of an automobile permits an unlicensed person to operate it, but solely for the purposes of that person, the owner is not responsible for the consequences of the operator's negligent operation, in the absence of evidence of incompetency on the part of the driver. The court rejected the contention that the relationship of master and servant, otherwise baseless, could be erected on the permission for use of the car by an unlicensed person. And in Hayes v. Brogan Cadillac-LaSalle Co., 10 N.J. Misc. 11 (Sup. Ct. 1931), where a used car dealer had permitted a prospective purchaser to test a car bearing the dealer's license plates over a week-end, during which an accident took place, the dealer was held not liable to the victim of the purchaser's negligence. The court said the facts did not warrant imputing the operation of the car to the dealer and that (page 13):
"While the presumption of law was that Brogan Cadillac-LaSalle Company, as owner of the car, was in possession and operating it, the evidence conclusively shows that this presumption was overcome by the uncontradicted proofs to the contrary."
The Hayes case, which applies a rule of general acceptance, Annotation, 31 A.L.R.2d 1445, would seem an a fortiori *458 authority in relation to the cause sub judice, as there was in that case no transfer of proprietorship in the vehicle in any degree when the accident happened.
The weight of authority elsewhere accords with the bent of the New Jersey cases cited. These cases present closely apposite situations: Buchholz v. Breitbach, 193 Wis. 224, 213 N.W. 329, 331 (Sup. Ct. 1927); State ex rel. Steinbruegge v. Hostetter, 342 Mo. 341, 115 S.W.2d 802 (Sup. Ct. 1938); Waters v. Hays, 118 S.W.2d 39 (Mo. App., St. L. Ct. of App. 1938) reversed on another point in State ex rel. Waters v. Hostetter, 344 Mo. 443, 126 S.W.2d 1164 (Sup Ct. 1939); Bradley v. Chickasha Cotton Oil Co., 184 Okl. 51, 84 P.2d 629 (Sup. Ct. 1938); Jenkins v. Spitler, 120 W. Va. 514, 199 S.E. 368 (Sup. Ct. 1938); Fredericks v. Birkett L. Williams Co., 68 Ohio App. 217, 40 N.E.2d 162 (Ct. App. 1940); Worsham Buick Co. v. Isaacs, 121 Tex. 587, 51 S.W.2d 277, 86 A.L.R. 232 (Sup. Ct. 1932); Annotation, 86 A.L.R. 236; see Endres v. Mara-Rickenbacker Co., 243 Mich. 5, 219 N.W. 719, 720 (Sup. Ct. 1928). The Massachusetts courts, by logical extension of the nuisance-trespasser doctrine (see supra), hold-in the dealer who unlawfully lends his license plates to another. McDonald v. Dundon, 242 Mass. 229, 136 N.E. 264, 26 A.L.R. 1243 (Sup. Jud. Ct. 1922). Where the dealer knows that the car is unfit or the driver incompetent he becomes liable, agency then being irrelevant. Toole v. Morris-Webb Motor Co., 180 So. 431 (Ct. App. La. 1938). See Patterson v. Surpless, supra (107 N.J.L., at p. 306); Jenkins v. Spitler, supra (199 S.E., at p. 371); Wheat v. Alderson, 234 Mo. App. 346, 130 S.W.2d 650, 652 (Ct. App. 1939).
The approach on the basis that the accident could not have happened if Auto Mart had not illegally loaned its license plates to Moore indicates no more than that the loan was a condition of the accident, not that it was its proximate cause. Moore's negligence was an exculpating superseding cause, Restatement of Torts, § 440; Worsham Buick Co. v. Isaacs, supra (51 S.W.2d at page 280). Nor was any hazard germane to the producing cause of *459 plaintiffs' injuries within the intended preventive scope of the statutes violated. See Prosser, op. cit., supra (page 269).
Plaintiffs' citation of Trautman v. Higbie, 10 N.J. 239 (Sup. Ct. 1952), does not help them. The decision merely applies a well-defined expansion of the doctrine of agency in a special field. Restatement of Torts, § 428; Venuto v. Robinson, 118 F.2d 679 (3rd Cir. 1941). The New York cases cited are irrelevant in regard to agency as the statute of that state imposes liability upon an owner for the negligent use of a car with his permission regardless of agency. Switzer v. Aldrich, 307 N.Y. 56, 120 N.E.2d 159 (1954). The effect of Peters v. Casualty Co. of America, 101 Wash. 208, 172 P. 220 (Sup. Ct. 1918), which supports plaintiffs' position, was erased by later legislation.
In our view plaintiffs' only substantial comfort derives from the Pennsylvania decision of Morgan v. Heinkel, 329 Pa. 360, 197 A. 920, 921 (Sup. Ct. 1938). There, in a factual setting somewhat resembling the present one, the court sustained the submission to a jury of the question of a dealer's liability for his purchaser's negligence while still using his plates, on the slender thread of the possibility that the purchaser was testing the car and was in that sense an employee of the seller. With all deference, our reading of the opinion fails to disclose any factual warrant for the holding. Moreover, there is no suggestion here that the car was being tested when Moore had his accident. In any event, both the result and the flavor of the Morgan case are in marked discordance with the decision of our own former Supreme Court in Hayes v. Brogan Cadillac-LaSalle Co., supra. It has for us no persuasiveness on the merits of the problem under analysis.
It thus appears that the overwhelming weight of authority, direct and analogous, is against the position urged by the plaintiffs. We have referred at the outset to their appeal to public policy. We are asked to project the legislative policy underlying the motor vehicle registration laws across the lines now containing the degree of common-law liability of the seller of a motor vehicle to those who suffer *460 at the hands of a negligent purchaser. It is generally of dubious validity to imply sanctions beyond those expressly fixed by the Legislature, in undertaking judicially to enforce its declared policy in a particular field. See Mayor and Council of Alpine Borough v. Brewster, 7 N.J. 42, 50 (1951). It has been said that "The common-law technique is based on a conception of law as experience developed by reason and reason tested and developed by experience," Pound, What of Stare Decisis? 10 Fordham L. Rev. 1, 5 (1941); Cardozo, The Nature of the Judicial Process (1921) p. 150. Cf. Evans v. Rohrbach, 35 N.J. Super. 260, 268 (App. Div. 1955), certif. den. Evans v. Matthews, 19 N.J. 362 (1955). Rules of liability in automobile cases are fraught with most permeating social and economic effects in this motor age. There is no evidence of any current lack of sensitivity or concern in the legislative branch in this area of public policy. Neither reason nor experience counsels the judicial divagation from fundamental principles which entertainment of plaintiffs' plea would entail. See the dissenting opinion of Mr. Justice Brandeis in International News Service v. Associated Press, 248 U.S. 215, 262, 263, 39 S.Ct. 68, 63 L.Ed. 211 (1918).
Plaintiffs complain of the entry of a formal order of dismissal by the trial judge, making a finding as to ownership of the car, entered ex parte after the filing of the notice of appeal. The regularity of this action does not affect the basis for our decision herein and consequently calls for no discussion.
Judgment affirmed.