JOHN E. JOHNSON v. JOANN M. SKINNER, Administratrix of the Estate of Thomas E. Cumberworth Skinner, JOHN RAPHAEL GREEN, and P. M. CONCEPTS, INC., D/B/A TOYOTA SANFORD

No. 8911SC684

(Filed 19 June 1990)

**1. Automobiles and Other Vehicles § 141 (NCI3d)— dealer tags placed on personal vehicle — statute applicable to employee of dealership**

N.C.G.S. § 20-79(d), which prohibits a manufacturer or dealer from attaching dealer tags to vehicles in personal use, applied to defendant mechanic who worked for defendant car dealership where defendant mechanic, as an individual and an agent of defendant dealership and with the knowledge and permission of the corporation, attached the tags to his personal automobile.

**Am Jur 2d, Automobiles and Highway Traffic §§ 28, 153, 427, 994.**

1

JOHNSON v. SKINNER

[99 N.C. App. 1 (1990)]

2. **Automobiles and Other Vehicles § 141 (NCI3d) — dealer tags — statute prohibiting attachment to personal vehicle — safety statute**

N.C.G.S. § 20-79(d), which prohibits a car manufacturer or dealer from attaching dealer tags to vehicles in personal use, is a safety rather than a revenue statute so that violation of the statute is negligence *per se*.

Am Jur 2d, Automobiles and Highway Traffic §§ 28, 153, 427, 994.

3. **Automobiles and Other Vehicles § 90.1 (NCI3d) — dealer tags — statute prohibiting attachment to personal vehicle — violation of statute proximate cause of accident — instruction proper**

In an action to recover for personal injuries sustained in an automobile accident, it was proper for the trial court to instruct the jury that the violation of N.C.G.S. § 20-79(d) prohibiting the attachment of dealer tags to a vehicle in personal use could be the proximate cause of the accident, since defendant dealership and defendant employee and car owner should have foreseen a danger to other motorists when for several months they allowed the car to be driven on the public highways with the dealer tags; defendant owner testified that he would not have allowed his car to be driven if he had been denied use of the dealer tags; and defendant dealership's officers and agents knew that by permitting defendant owner to use the dealer tags they were encouraging the operation of a vehicle by someone who had not complied with North Carolina's Financial Responsibility Act.

Am Jur 2d, Automobiles and Highway Traffic §§ 28, 153, 427, 994.

4. **Automobiles and Other Vehicles § 87.8 (NCI3d) — negligence of car dealership and car owner — negligence not insulated by negligence of driver**

Negligence of defendant car dealership and defendant employee and car owner was not superseded by the negligence of the driver, since the area of risk created by defendant dealership and defendant employee and car owner in allowing the attachment of dealer tags to a personal use vehicle included the subsequent accident and injuries suffered by plaintiff.

Am Jur 2d, Automobiles and Highway Traffic §§ 28, 153, 427, 994.

5. **Negligence § 27.1 (NCI3d) — auto accident — evidence of uninsured status of vehicle owner — admissibility**

In an action to recover for injuries sustained in an automobile accident, the trial court did not err in allowing evidence concerning the uninsured status of defendant car owner, since the evidence was admitted to show defendant's motive for using his employer's dealer tags, to show that defendant dealership had knowledge that defendant owner wanted to use the tags so his vehicle could be driven on the highway by himself and others after his insurance had lapsed, and to allow the jury to assess the foreseeability of an accident when dealer tags are loaned to a member of the class of persons who have not complied with North Carolina's Financial Responsibility Act, and the jury could not have decided the issue of foreseeability without knowing that defendant's automobile was uninsured. N.C.G.S. § 8C-1, Rule 411.

Am Jur 2d, Automobiles and Highway Traffic §§ 28, 153, 427, 994.

6. **Evidence § 49.2 (NCI3d) — past and present earnings of auto accident victim — expert opinion — basis of opinion questioned**

In an action to recover for injuries sustained in an automobile accident, the testimony of an economist as to the past and future economic earnings of plaintiff was not inadmissible because his opinion was based on the assumptions of medical experts and plaintiff's attorney; rather, defendants' complaint went to the weight of the expert evidence underlying the economist's testimony, and it was the function of cross-examination to expose such weaknesses.

Am Jur 2d, Expert and Opinion Evidence § 75.

Judge WELLS dissenting.

APPEAL by defendants from judgment entered by *Judge Coy E. Brewer, Jr.*, in LEE County Superior Court. Heard in the Court of Appeals on 10 January 1990.

Plaintiff John E. Johnson instituted this action against defendants for personal injury damages stemming from an automobile

accident. Defendants Joann M. Skinner, administratrix of the estate of Thomas E. Skinner ("Skinner"); John R. Green; and P.M. Concepts, Inc., d/b/a Toyota Sanford ("Toyota") filed an Answer denying negligence. Subsequent to the filing of the Answer, Skinner stipulated to his negligence in the operation of the vehicle during the accident. The matter came on for trial, and a jury found that the negligence of Green and Toyota were also proximate causes of the accident and awarded $750,000 to the plaintiff against all defendants. Defendants appealed.

The record reveals the following facts: at the time of the accident, Toyota operated an automobile dealership in Sanford, North Carolina, where Green worked as a mechanic. Green and the decedent Skinner lived together with a third person, Jinene Pierce.

At least one month, but perhaps as long as several months before the accident, Green obtained a set of dealer license plates from Toyota and placed them on his 1977 Pontiac Grand Prix. Before he placed the dealer tags on his automobile, Green turned in his personal motor vehicle plates to the Department of Motor Vehicles and canceled his insurance on the vehicle. Green testified that he believed when he put the dealer tags on his Grand Prix the automobile would be covered by Toyota's liability insurance. Green's possession and use of the dealer tags were known to the president, general manager and service manager of Toyota.

Green was attempting to sell his automobile at the time of the accident and borrowed the dealer tags primarily for the purpose of allowing prospective purchasers to test drive the automobile. However, he also allowed Skinner and Pierce to have free access to the vehicle and to use it for personal trips. Both Skinner and Pierce often drove the automobile with the plates attached, and on several occasions they drove the car onto the premises of the Toyota dealership where they were observed by employees and officers of the corporation.

On 10 May 1987, the decedent Skinner borrowed Green's Pontiac to go on a social outing with Pierce and other friends. Plaintiff elicited testimony from Pierce tending to show that Green knew of the trip and that Skinner and Pierce had permission to use the automobile. Green was not in the automobile at the time of the accident, and Toyota had no knowledge of the trip. On the return drive home from the lake, Skinner negligently collided with Johnson, causing his injuries.

JOHNSON v. SKINNER

[99 N.C. App. 1 (1990)]

Green testified that on the day of the accident he had gone to his mother's house, that he did not know of the trip to the lake and that he had not given Skinner or Pierce permission to use his Pontiac for that particular trip.

Johnson offered evidence tending to show that on the day after the accident Green was instructed by the president of Toyota to say that his car had been stolen, that the dealer tags had been loaned to Green on the Friday before the accident, not that he had had the tags for weeks, and that Toyota had told Green to return the tags on the following Monday. Over objection of all defendants, plaintiff also elicited testimony from Green that he had no liability insurance on the automobile at the time of the accident.

Plaintiff also presented testimony of four expert witnesses. Dr. David Ciliberto, a medical expert specializing in orthopedics, testified that Johnson sustained multiple fractures, and life-threatening injuries to his head. Dr. Ciliberto expressed the opinion that plaintiff "has permanent injury." Dr. Charles Matthews, a neurologist, testified that plaintiff suffered from a pain syndrome known as reflex sympathetic dystrophy in which patients often experience "agonizing pain." He testified that therapy might or might not benefit plaintiff. Katherine Currie, a vocational evaluator, testified with respect to Johnson's ability to return to gainful employment. She stated that plaintiff showed low or below average performance on tests for dexterity, size discrimination, sorting, color discrimination and assembly. Ms. Currie did not feel that plaintiff would be able to return to competitive employment. Dr. Finley Lee, Jr., an economist and professor of business administration, testified concerning Johnson's past and future economic losses. Dr. Lee based his economic determinations on the assumption that Johnson was totally disabled. This assumption, in turn, was based on information provided by plaintiff's attorney.

*Love & Wicker, by Dennis A. Wicker, for plaintiff appellee.*

*Robert C. Bryan for defendant appellant P. M. Concepts, Inc., d/b/a Toyota Sanford.*

*Van Camp, West, Webb & Hayes, by Stanley W. West and W. Carole Holloway, for defendant appellants Joann M. Skinner and John Raphael Green.*

ARNOLD, Judge.

Defendants' first two assignments of error concern the liability of Green and Toyota based on their violation of a statute. The parties stipulated that defendant Skinner had been negligent in his operation of the automobile. Concerning the liability of Green and Toyota, the case went to the jury based on an alleged violation of N.C. Gen. Stat. § 20-79(d) (1987), which at the time of the accident provided:

> No manufacturer or dealer in motor vehicles, trailers or semitrailers shall cause or permit any such vehicle owned by such person or by any person in his employ, which is in the personal use of such person or employee, to be operated or moved upon a public highway with a "dealer" plate attached to such vehicle.

*Id.* (A 1989 amendment, effective 1 October 1989, rewrote subsection (d). The amendment is not applicable to this litigation. *See* N.C. Gen. Stat. § 20-79 (1989) ). Violation of this statute could result in a misdemeanor conviction and the imposition of a fine of not less than $100 or more than $1,000. N.C. Gen. Stat. § 20-79(a). The trial judge determined that the statute was a safety statute and violation of it, negligence *per se*.

[1] First, Green argues that N.C. Gen. Stat. § 20-79(d) does not apply to him because he is not a "manufacturer" or "dealer" in motor vehicles. His argument is unconvincing. Toyota is a corporation, an artificial entity, which cannot itself actually "cause or permit" the attachment of dealer tags in violation of the statute. For a corporate dealer like Toyota to violate N.C. Gen. Stat. § 20-79(d), some agent or employee must cause or permit the attachment of the tags. Green, as an individual and an agent of Toyota and with the knowledge and permission of the corporation, attached the tags to his personal automobile. In this context, the statute applies.

[2] All defendants next argue that N.C. Gen. Stat. § 20-79(d) is not a safety statute. The trial court instructed that a violation of the statute would constitute "negligence within itself." Defendants contend the statute is only a revenue measure, and a violation of the statute therefore is not negligence *per se*. Defendants note that courts in other jurisdictions have found dealer tag statutes to be revenue, rather than safety statutes. *Combron v. Cogburn,*

116 Ga. App. 373, 157 S.E.2d 534 (1967); *Burke v. Auto Mart*, 37 N.J. Super. 451, 117 A.2d 624 (1955). Nevertheless, North Carolina courts have expressly stated that N.C. Gen. Stat. § 20-79(d) is a safety statute. In *Kraemer v. Moore*, 67 N.C. App. 505, 313 S.E.2d 610, *review denied*, 311 N.C. 758, 321 S.E.2d 137 (1984), Judge Braswell wrote:

> Many jurisdictions, including North Carolina and now Massachusetts, have safety statutes which make it unlawful for a dealer to permit any person or employee to operate a vehicle for personal use with a "dealer" tag plate attached.

*Kraemer* at 508, 313 S.E.2d at 612-613. This language is clear and unambiguous and not an inadvertent use of the term "safety" as defendants suggest.

[3] ˙ Defendants' next assignment of error presents the main and very difficult issue in this case—the proximate cause of the accident. They contend that illegally lending a dealer tag to an employee which facilitates the use of an automobile cannot be the proximate cause of a subsequent accident. They urge, as a matter of law, that the violation of the dealer tag statute cannot be the proximate cause of plaintiff's injuries. In determining whether there was sufficient evidence for the trial court to find defendants negligent, the question is whether the evidence when taken in the light most favorable to the plaintiff either failed to establish a prima facie case of negligence on the part of Green and Toyota, or whether the evidence established beyond question that the negligence of Green or Toyota was insulated as a matter of law by the intervening negligence of Skinner.

It is the jury's domain, under appropriate instructions from the court, to apply the standard of the reasonable person to the facts in order to determine what was the proximate cause of the aggrieved party's injuries. *Williams v. Smith*, 68 N.C. App. 71, 314 S.E.2d 279, *cert. denied*, 311 N.C. 769, 321 S.E.2d 158 (1984). "It is only when the facts are all admitted and only one inference may be drawn from them that the court will declare whether an act was the proximate cause of an injury or not. But that is rarely the case." *Conley v. Pearce-Young-Angel Co.; Rutherford v. Pearce-Young-Angel Co.*, 224 N.C. 211, 214, 29 S.E.2d 740, 742 (1944). "Proximate cause is a cause which in natural and continuous sequence, unbroken by any new or independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred,

and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed." *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984). Thus, it is axiomatic that proximate cause requires foreseeability. *Wiggins v. Paramount Motor Sales*, 89 N.C. App. 119, 365 S.E.2d 192 (1988).

The test of foreseeability does not require that defendant must foresee the injury in the precise form in which it occurred. All that the plaintiff is required to prove in establishing proximate cause is that in "the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected." *Hairston* at 234, 311 S.E.2d at 565 (citations omitted); *see, generally*, Byrd, Proximate Cause in North Carolina Tort Law, 51 N.C.L. Rev. 951 (1973).

In *Hairston*, a deceased motorist's wife brought a wrongful death action against an automobile dealership and the driver of a flatbed truck. The truck driver had negligently struck a van that was parked on the edge of the interstate behind the decedent's vehicle. The decedent was standing between the van and his own automobile when the collision occurred, and he was crushed to death between the two vehicles. *Hairston* at 231, 311 S.E.2d at 564. Just prior to the accident, the decedent had purchased his automobile from the dealership. Before leaving the sales lot, the dealer had changed the wheels on decedent's new vehicle, but the dealer's mechanic had failed to tighten the lug nuts on one wheel. *Id.* at 230, 311 S.E.2d at 563. The decedent traveled several miles from the dealership when the left rear wheel came off. He pulled over to the edge of the interstate and moments later the accident occurred. *Id.* at 231, 311 S.E.2d at 564.

The jury in *Hairston* found the driver who operated the flatbed truck and the automobile dealership liable, but the trial judge allowed the dealer's motion for judgment notwithstanding the verdict. We upheld the ruling, finding that although the dealership was negligent in failing to tighten the lug bolts on the wheel, the acts of negligence were not the proximate cause of the death of the plaintiff's intestate, and that such negligent acts of the dealership were insulated by the subsequent negligent acts of the truck

driver. *See id.* at 232, 311 S.E.2d at 564. The Supreme Court reversed. Writing in *Hairston*, Justice Martin stated:

> The law requires only reasonable prevision. A defendant is not required to foresee events which are merely possible but only those which are reasonably foreseeable.

> We note, however, that the law of proximate cause does not always support the generalization that the misconduct of others is unforeseeable. *The intervention of wrongful conduct of others may be the very risk that defendant's conduct creates.* In the absence of anything which should alert him to the danger, the law does not require a defendant to anticipate specific acts of negligence of another. *It does, however, fix him with notice of the exigencies of traffic, and he must take into account the prevalence of that "occasional negligence which is one of the incidents of human life."*

*Hairston* at 234, 311 S.E.2d at 565 (citations omitted and emphases added). In the case *sub judice*, the jury was asked to decide whether plaintiff was injured or damaged as a proximate result of defendants' negligence. The court instructed that to hold that the violation of the dealer tag statute was a proximate cause of plaintiff's injury, the jury must find that plaintiff's injury, or at least some similar injurious result, was foreseeable, and that by facilitating the use of the Pontiac by placing dealer tags on it, defendants created a safety risk to the public, greater than would exist otherwise, from the fact that the vehicle had dealer plates on it.

Defendants argue that *Kraemer v. Moore*, 67 N.C. App. 505, 313 S.E.2d 610 (1984), controls here. In *Kraemer*, an automobile dealership's employee placed a dealer tag on his personal vehicle. Plaintiff was injured when a ladder the employee had attached to his vehicle came unfastened, flew off and struck plaintiff as he walked along the road. *Id.* at 506, 313 S.E.2d at 611. Plaintiff obtained a judgment against the employee and then brought an action against the dealer, but this Court refused to hold the company liable. Nevertheless, proximate cause was not the question before us in *Kraemer*; instead, the issue was one of insurance. *Id.* We did not rule there that the improper use of dealer tags could never be the proximate cause of an accident; rather, we found that plaintiff's evidence also "fails to show that the use of the dealer tag was a proximate cause of his injuries." *Id.* at 509, 313 S.E.2d at 613.

Furthermore, the holding in *Kraemer* turned on facts that are distinguishable from those before us now. First and foremost, the dealership in *Kraemer* did not know that the employee was using a dealer tag on his personal vehicle. That fact is inapposite to the situation here. In *Kraemer*, the dealer previously had allowed the employee to use dealer plates for the purpose of transporting the employee's unsold vehicles to the defendant's car lot but had not given him permission to put the dealer tags on his own personal truck. *Id.* at 508, 313 S.E.2d at 612. From this the Court concluded, "[t]he plaintiff's evidence . . . fails to show that the defendant caused or permitted the employee to unlawfully use the dealer tag in violation of G.S. § 20-79(d)." *Id.* Second, the dealer did not know that the employee had taken the ladder for his personal use. And finally, the plaintiff in *Kraemer* was injured by the ladder, not the employee's car. *Id.* at 506, 313 S.E.2d at 611.

Even though *Kraemer* is distinguishable, we note that courts in other jurisdictions have refused to hold automobile dealers liable in situations similar to the one here. Some courts have determined that no causal connection exists between the violation of a dealer tag statute and the accident causing injuries. *Cambron*, 116 Ga. App. 373, 157 S.E.2d 534; *Burke*, 37 N.J. Super. 451, 117 A.2d 624; *see* Annotation, *License Plates—Improper Use*, 99 A.L.R.2d 904 (1965). However, many of these cases turned on other issues such as agency or ownership, or involved statutes not applicable here or ones not interpreted as safety statutes. *See also Pray v. Narragansett Improv. Co.*, 434 A.2d 923 (1981). Several jurisdictions, however, have upheld claims based on the premise that the misuse of dealer or personal plates was a proximate cause of an accident. In *Barnett v. Rosenthal*, 40 Conn. Supp. 149, 483 A.2d 1111 (1984), defendant was found negligent because he violated a statute by failing to turn in to the motor vehicle commissioner license plates that had been attached to an automobile that he sold. Whether leaving the license plates in the automobile after the sale, which had facilitated the vehicle's use, could be the proximate cause of the injuries was a question for the jury, the court said. *Id.*

In the only case we uncovered where, as here, the dealer tags were loaned illegally to an employee for a significant period of time, the court ruled that the misuse of the tags could constitute the proximate cause of an accident. *Wieland v. Kenny*, 385 Mich. 654, 189 N.W.2d 257 (1971). While test driving a personal vehicle

that carried a dealer plate, an employee of the dealer negligently drove his car into the path of plaintiff's motorcycle, causing injuries. *Wieland v. Kenny*, 22 Mich. App. 30, 176 N.W.2d 699 (1970). The plaintiff, rightly fearing that the employee would be uncollectible, also sued the dealer on the theory that its use of the plate violated a Michigan statute. The Michigan Supreme Court estopped the dealer from arguing that his negligence was not the proximate cause of the injuries: "[W]e cannot hear him or anyone else on behalf of the defendant dealership say there was no causal connection between the aforesaid statutory violation and the plaintiff's sustained injuries." *Wieland*, 385 Mich. at 658, 189 N.W.2d at 259. There is, therefore, authority for the proposition that the illegal use of a dealer's plate could be the proximate cause of a subsequent injury.

Defendants argue that even if violation of N.C. Gen. Stat. § 20-79(d) could be a proximate cause of the accident, no evidence was presented to support the jury charge that defendants "created a safety risk to the public, because of the fact that the vehicle had dealer plates on it, greater than would exist otherwise." The trial judge recognized that merely facilitating the addition of another vehicle into highway traffic was insufficient to create liability. Plaintiff then rested his theory of negligence on the contention that uninsured motorists who are unable to register their vehicles are, as a class, a somewhat greater risk of injury to people on the highway than insured motorists. While this theory of negligence gives us pause, the trial judge was correct in submitting this case to the jury. The evidence presented indicates that the use of the dealer tags was a direct cause in fact of the accident. Green testified that he would not have allowed Skinner to drive his car if he had been denied use of the dealer tags. Toyota's Service Manager Terry Brown, Green's direct supervisor, testified he was aware that Green was using dealer tags on his Pontiac at least three or four months before the collision. Two months before the collision Green told Brown that General Manager Dan Nipper had given him permission to use the plates. Brown also testified that he had seen Pierce and Skinner drive the Pontiac on Toyota's premises a number of times, and that the president of the company, Phil McLamb, knew that Green was allowing others to drive the vehicle with the dealer tags prior to the accident.

The crucial question here is whether Toyota and Green should have foreseen a danger to other motorists when for several months

they allowed the Pontiac to be driven on the public highways. On this point there was competent evidence that both Toyota and Green could have foreseen that their negligence might result in injury to other motorists. When Phil McLamb found out Green was using the dealer plates he exclaimed, "[M]ake damn sure he's careful." Similarly, evidence was presented from which the jury could conclude that Green knew Skinner previously had used lack of care in driving the Pontiac. Again, it should be stressed that the law does not require that Green and Toyota had foreseen the occurrence of the accident in a precise manner; instead, their actions may be the proximate cause of the injuries if at the time of their negligence they could have foreseen that "some injury would result from [their] act[s] or omission[s], or that consequences of a generally injurious nature might have been expected." *Hairston*, 310 N.C. at 234, 311 S.E.2d at 565 (quoting *Hart v. Curry*, 238 N.C. 448, 449, 783 S.E.2d 170, 170 (1953)). Based on the facts of this case, the accident that occurred was within the reasonable realm of foreseeable events.

We also base our decision on certain policy considerations, which are always inherent in a case of this nature. Toyota's officers and agents knew that by permitting Green to use the dealer tag they were encouraging the operation of a vehicle by someone who had not complied with North Carolina's Financial Responsibility Act. *See* N.C. Gen. Stat. §§ 20-279.1 to -279.39 (1989). The purpose of this statute is to provide protection to the public from damages resulting from the negligent operation of automobiles by irresponsible persons. *Insurance Co. v. Insurance Co.*, 279 N.C. 240, 182 S.E.2d 571 (1971). To hold that a knowing and flagrant violation of the dealer tag statute can never constitute the proximate cause of a highway accident would eviscerate the safety component of N.C. Gen. Stat. § 20-79(d).

At the time of plaintiff's accident, Toyota had roughly 150 dealer tags and, according to the president of the company, no written policy to govern their use. The company's service manager testified that no one ever inventoried the dealer tags assigned to his department to determine who was using the tags, nor was he ever instructed concerning any restrictions on the use of the tags. It would be contrary to the public policy inherent in N.C. Gen. Stat. § 20-79(d) to remove the specter of civil liability as an incentive for dealers to comply with our dealer tag law. We hold, therefore, that it was proper for the trial court to instruct

the jury that the violation of the dealer tag statute could be the proximate cause of the accident.

[4] Defendants make a related argument that even if the combined negligence of Green and Toyota was a proximate cause of plaintiff's injuries, their negligence was superseded by the negligence of Skinner. However, it is clear that in North Carolina there may be two or more proximate causes of an injury, and even where those causes originate from separate and distinct sources or agencies operating independently of each other, if they join together producing injury, each may be liable. *McEachern v. Miller*, 268 N.C. 591, 151 S.E.2d 209 (1966). Furthermore, where defendant's conduct helps precipitate an intervening event, he may still be held liable if the second event is reasonably regarded as part of the risk of his original conduct. *See* Byrd, *supra*, at 966. In other words, a defendant may be liable despite the negligent act of another if at the time of his act he is *on notice* of circumstances that make the intervention of others likely. For example, reasonable people are required in many situations to anticipate the intermeddling of children; likewise, in some situations, reasonable people must anticipate the "exigencies of traffic," and that " 'occasional negligence which is one of the incidents of human life.' " *Hairston*, 310 N.C. at 234, 311 S.E.2d at 565 (citations omitted).

Nevertheless, we still must decide if the evidence in this case is susceptible to the single inference that the defendants' negligence ceased to be the proximate cause and was superseded and insulated by the subsequent negligence of Skinner. From our Supreme Court we learn the following:

> An efficient intervening cause is a new proximate cause which breaks the connection with the original cause and becomes itself solely responsible for the result in question. It must be an independent force, entirely superseding the original action and rendering its effect in the causation remote. It is immaterial how many new elements or forces have been introduced, if the original cause remains active, the liability for its result is not shifted.

*Harton v. Telephone Co.*, 141 N.C. 455, 462-63, 54 S.E. 299, 301-02 (1906). Again, whether the intervening act of a third person is the proximate cause of an injury and sufficient to excuse the defendant's lack of care depends on foreseeability. *Tyndall v. United States*, 295 F.Supp. 448 (1969). Unless only one inference may be

drawn from the evidence, it is for the jury to decide "whether the intervening act and the resultant injury were such that the author of the original wrong could reasonably have expected them to occur as a result of his own negligent act." *Hairston*, 310 N.C. at 238, 311 S.E.2d at 567. We are here only to determine if reasonable persons could differ on this question of foreseeability, and on the facts of this case, such a disagreement is reasonable. Skinner's negligence was not so highly improbable as to bear no reasonable connection to the harm threatened by Green and Toyota's original negligence. The area of risk created by defendants' negligence included the subsequent events and injuries suffered by plaintiff.

[5] Defendants next assign error to the admission of evidence concerning the insured status of Green. Counsel for both Green and Toyota objected to this line of questioning and were granted a continuing objection to specific questions relating to insurance in general and whether a particular vehicle was insured. Defendants' earlier motion in limine as to evidence of insurance had also been denied. N.C. Gen. Stat. § 8C-1, Rule 411 provides as follows:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

Rule 411 enumerates several examples for which evidence of insurance is admissible, but it does not by its terms limit admissibility to those examples alone. 1 L. Brandis, *Brandis on North Carolina Evidence* § 88 (1988). In the case *sub judice*, evidence that Green's automobile was uninsured was not offered to demonstrate the cause of the accident or to suggest the relative wealth of the defendants. Instead, the evidence was offered for the following purposes: (1) to show Green's motive for using the dealer tags; (2) to show that Toyota had knowledge that Green wanted to use the tags so his Pontiac could be driven on the highway by himself and others after Green's insurance had lapsed; and (3) to allow the jury to assess the foreseeability of an accident when dealer tags are loaned to a member of the class of persons who have not complied with North Carolina's Financial Responsibility Act. The jury could not have decided the issue of foreseeability without knowing that Green's

automobile was uninsured. Therefore, defendants' assignment of error concerning this issue is overruled.

[6] Defendants also assign error to the testimony of Dr. Finley Lee, Jr., an economist who testified to the past and future economic earnings of the plaintiff. Dr. Lee testified that plaintiff's future loss of income would be $442,134.00, and that he based this calculation on several things, including information provided by plaintiff's counsel and on the assumption that plaintiff was totally and permanently disabled. Defendants argue that Dr. Lee's testimony was inadmissible because his opinion was based on the assumptions of other experts, not exclusively on assumptions of his own, and that his use of a questionnaire that he sent to plaintiff's counsel was improper. In effect, defendants contend that plaintiff's attorney and the opinions of medical experts are not sources of information reasonably relied upon by economists who testify as experts. *See* N.C. Gen. Stat. § 8C-1, Rule 411.

Coincidentally, Dr. Lee also testified in *Hairston* and the Supreme Court upheld his testimony there. "We find equally untenable the argument that the expert's opinion testimony lacks a proper foundation based as it was on information gleaned from 'statistics that have been prepared by other people' and from the plaintiff or her lawyer." *Hairston*, 310 N.C. at 244, 311 S.E.2d at 571. Defendants' complaint here goes to the weight of the expert evidence concerning plaintiff's disability upon which Dr. Lee rested his assumption of total disability rather than the admissibility itself of Dr. Lee's testimony. In this regard, defendants' argument is fundamentally flawed. It is the function of cross-examination to expose the weaknesses in the assumptions underlying an expert's testimony, which defendants' counsel undertook to do in sixty-five pages of the transcript. *See id.* at 244, 311 S.E.2d at 571. Defendants' objection to the testimony of Dr. Lee is untenable.

Finally, we have examined defendants' other assignments of error and found them to be without merit. We find no error in the trial below.

No error.

Chief Judge HEDRICK concurs.

Judge WELLS dissents.

Judge WELLS dissenting.

I cannot agree that the lending of defendant Toyota's dealer tag to defendant Green was a proximate cause of plaintiff's injury. *See Federated Mutual Insurance Co. v. Hardin*, 67 N.C. App. 487, 313 S.E.2d 801 (1984). I also perceive that *Kraemer v. Moore*, discussed by the majority, supports my position. I therefore must respectfully dissent.