MINNIE A. CARRIER, Plaintiff v. CLYDE DARRICK STARNES, Defendant

No. COA94-1361

(Filed 7 November 1995)

**Evidence and Witnesses § 148 (NCI4th)— automobile personal injury action—investigator hired by insurance company— evidence of insurance admitted to show bias**

In an action to recover for personal injuries sustained in an automobile accident, the trial court did not err in allowing plaintiff to cross-examine a witness about defendant's insurer's hiring him to make a secret videotape of plaintiff, though evidence that

a person possesses liability insurance generally is not admissible to show that a person acted negligently or otherwise wrongfully, since the trial court in this case allowed the insurance evidence under a bias theory which was proper because the witness's testimony went beyond the bare particulars necessary to lay a proper foundation for admission of the videotape evidence, but was in the nature of eyewitness observation, and became substantive evidence on the ultimate issue of negligence. N.C.G.S. § 8C-1, Rule 411.

**Am Jur 2d, Evidence § 495.**

**Admissibility of evidence, and propriety and effect of questions, statements, comments, etc., tending to show that defendant in personal injury or death actions carries liability insurance. 4 ALR2d 761.**

Appeal by defendant from judgment entered 16 June 1994 by Judge Charles Lamm in Burke County Superior Court. Heard in the Court of Appeals 22 August 1995.

*Byrd, Byrd, Ervin, Whisnant, McMahon & Ervin, P.A., by Robert B. Byrd, Lawrence D. McMahon, Jr., and Sam J. Ervin, IV, for plaintiff appellee.*

*Patrick, Harper & Dixon, by Gary F. Young, for defendant appellant.*

COZORT, Judge.

Plaintiff filed suit to recover damages allegedly caused when defendant's automobile hit the automobile in which plaintiff was riding. Defendant offered into evidence a videotape of plaintiff taken by an investigator hired by defendant's insurance carrier. The trial court permitted plaintiff to cross-examine the investigator as to his employment by the insurance carrier. Defendant argues on appeal that this cross-examination was improper. We find the cross-examination by plaintiff was directed at the issue of witness bias, not the independent fact of liability insurance, and we find no error. The facts and procedural history follow.

The plaintiff, Minnie A. Carrier, accepted a ride home from work in a car driven by Wanda Tuttle on 14 August 1991. During the ride, rain was falling and the roads were wet. Ms. Tuttle arrived at an intersection, slowed down, and began to turn right. Almost simultane-

ously, defendant Clyde Darrick Starnes rounded a slight curve in the road and saw Ms. Tuttle's stationary car. He could not stop to avoid a collision. Ms. Carrier sued Mr. Starnes in tort, seeking damages for personal injuries sustained in the accident. Ms. Carrier alleged injuries to her back, neck and particularly her right arm and hand. Integon General Insurance Corporation (Integon), provider of underinsured motorist coverage to Ms. Carrier, participated in the case as an unnamed defendant pursuant to N.C. Gen. Stat. § 20-279.21(b)(4) (1993). Nationwide Insurance Company (Nationwide) was Mr. Starnes' primary liability insurance carrier.

At trial, Mr. Starnes and Integon filed motions *in limine*, requesting "that all witnesses in this action be ordered not to disclose that [a] videotape [of Ms. Carrier] was taken by an individual hired by the insurance carrier" and "that plaintiff's attorney be ordered not to ask any witness to divulge who hired the individual that took the videotape." Plaintiff argued at trial that such questions were relevant to show the bias of the witness and financial interest between the maker of the tape, a private investigator, and Nationwide. The trial court allowed the motion in part, informing plaintiff that he could inquire of the witness who hired him. The trial court instructed plaintiff to apply to the court before making inquiries regarding insurance.

The defendant introduced a videotape of the plaintiff taken by a private investigator, Mr. Kenneth Holmes. Mr. Holmes had been hired by Nationwide for the express purpose of assisting the defendant's case. Mr. Holmes' duties were to watch the plaintiff and videotape her actions. Mr. Holmes was paid $40.00 per hour for his surveillance, and was paid at the same rate for his services at trial.

In his testimony on direct examination, Mr. Holmes described his personal observations of plaintiff's activities, such as mowing the lawn, pulling weeds, and opening an automobile door. Mr. Holmes stated that he paid "particular attention to those areas" of Ms. Carrier's body that were the subject of plaintiff's complaint. After Mr. Holmes' testimony on direct examination, the videotape was received into evidence. The videotape was silent, with no conversation.

During cross-examination, Mr. Holmes stated: "[T]here are things of course that I observed that aren't depicted on the videotape . . . ." Later during cross-examination, the plaintiff broached the subject of insurance with Mr. Holmes, inquiring about his financial relationship with Nationwide. The defense objected, and there was a colloquy at the bench. The trial court permitted the plaintiff to elicit evidence

concerning private investigator Holmes' financial arrangement with Nationwide. Specifically, plaintiff was allowed to question Mr. Holmes' past and future involvement with Nationwide, the surveillance instructions given Mr. Holmes by the company, and Mr. Holmes' compensation for testifying on Nationwide's behalf. Defendant objected to this line of questioning. The trial court overruled the objections. The defendant then moved for a mistrial on grounds that "incompetent and prejudicial insurance information had been admitted." The court denied the motion for mistrial. In its charge, the court instructed the jury to consider insurance only as it related to the bias or prejudice of Mr. Holmes and his financial arrangement with Nationwide. The jury returned a verdict for plaintiff for $50,000.00 as compensatory damages. Defendant appeals to this Court.

Defendant first argues the trial court erred by allowing plaintiff to cross-examine Mr. Holmes about Nationwide's hiring Mr. Holmes to do the videotape. We disagree. Generally, evidence that a person possesses liability insurance is not admissible to show that a person "acted negligently or otherwise wrongfully." N.C. Gen. Stat. § 8C-1, Rule 411 (1992); *see Smith v. Starnes*, 88 N.C. App. 609, 610, 364 S.E.2d 442, 443 (1988). However, Rule 411 is not an absolute bar to the admission of liability insurance as competent evidence. Instead, Rule 411 provides for the admission of evidence concerning insurance when "offered for another purpose, such as proof of agency, ownership, control, or *bias* or *prejudice* of a witness." N.C. Gen. Stat. § 8C-1, Rule 411 (emphasis added).

The enumerated list of exceptions to Rule 411 is non-exclusive, as Rule 411 merely bars admission of insurance evidence as an independent fact, i.e., solely on the issue of negligent or wrongful conduct. *Id.*; 1 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 88 (3d ed. 1988). The Rule 411 bar against insurance evidence does not come into play if the evidence is offered to achieve a collateral purpose. *Smith*, 88 N.C. App. at 610, 364 S.E.2d at 443. So long as the proponent of the insurance evidence acts in good faith, she may raise the issue of liability coverage on bias or prejudice grounds, "if it reasonably appears that a witness has such an interest that it would legally affect the value of his testimony." *Bryant v. Welch Furniture Co.*, 186 N.C. 441, 445, 119 S.E. 823, 825 (1923); *see also Shields v. Nationwide Mut. Fire Ins. Co.*, 61 N.C. App. 365, 379-80, 301 S.E.2d 439, 448 (1983), *disc. review denied*, 308 N.C. 678, 304 S.E.2d 759 (1983), where we held that evidence of liability insurance is admissible to show bias or financial interest of witness.

In *Johnson v. Skinner*, 99 N.C. App. 1, 14, 392 S.E.2d 634, 641, *disc. review denied*, 327 N.C. 429, 395 S.E.2d 680 (1990), evidence of insurance coverage was allowed under a "motive" exception to Rule 411. There, an automobile dealership had permitted an employee to operate a car with dealer license tags, because the employee's liability insurance had lapsed. By using an automobile dealer tag, the employee defendant attempted to gain coverage under the dealer's liability insurance. The employee negligently collided with another car, causing injury. *Id.* at 13-14, 392 S.E.2d at 635.

At trial, the *Johnson* plaintiff raised "specific questions relating to insurance in general and whether a particular vehicle was insured." *Id.* at 14, 392 S.E.2d at 641. The trial court allowed the insurance questions, over defendant's objection, holding the evidence was "not offered to demonstrate the cause of the accident or to suggest the relative wealth of the defendants." *Id.* Rather, the insurance evidence was allowed, because it illuminated the motive behind the defendant's improper use of an automobile dealer's tag. *Id.* In addition to motive, the trial court also found that insurance coverage was admissible to demonstrate the car dealership's knowledge of the employee's motive in using the tag, and to assess the foreseeability of an accident arising out of the employee's use of the tag. *Id.* at 14, 392 S.E.2d at 641-42. On appeal, this Court found no error in the trial court's decision to allow insurance questions pursuant to Rule 411. *Id.* at 15, 392 S.E.2d at 642.

The *Johnson* Court's analysis is applicable to the case at bar. Factually, both cases concern automobile-related negligence. More importantly, both involve the proper application of the Rule 411 exceptions concerning admission of insurance coverage as evidence. Where the *Johnson* Court's analysis turns on motive as the means for admission under Rule 411, the trial court in the instant case allowed the insurance evidence under a bias theory. In both instances, evidence of insurance coverage was not used as an independent fact.

Defendant argues there is no proper purpose by which insurance evidence should have gained admission in the instant matter. He contends plaintiff's cross-examination was nothing but a manipulation of Rule 411 designed to put the existence of insurance coverage before the jury. We do not agree.

Defendant's argument is premised upon a theory that bias is not a legitimate issue with regard to private investigator Holmes' testimony. Defendant describes the purpose of Mr. Holmes' testimony as

CARRIER v. STARNES

[120 N.C. App. 513 (1995)]

"merely to authenticate and identify the videotape of the Plaintiff." Moreover, defendant asserts Mr. Holmes did not testify substantively on contents of the videotape, or his personal observations of plaintiff's activities. Defendant's argument is not supported by the record. In this case Mr. Holmes did much more than merely authenticate a videotape of the plaintiff. As the record demonstrates, Mr. Holmes' testimony went beyond the bare particulars necessary to lay a proper foundation for admission of the videotape evidence. Much of Mr. Holmes' testimony was in the nature of eyewitness observation. For example, Mr. Holmes testified on direct examination that he had paid particular attention to plaintiff's use of her right hand, "to see if there was any hindrance in movement or impairment or avoidance of using" the hand. Mr. Holmes noted on direct examination that he observed the plaintiff using "her right hand to pull [the lawnmower] backwards." Mr. Holmes also responded negatively to the question of whether the plaintiff had "any difficulty in using the right hand."

Mr. Holmes' statements have the character of substantive testimony. Mr. Holmes described the actions of plaintiff he personally observed. His testimony took on the role defendant claimed the videotape was to perform. Defendant cannot contend the information conveyed by Mr. Holmes is purely foundational. To the contrary, Mr. Holmes' testimony adds to the information purportedly on the videotape. Mr. Holmes' testimony was not limited to those facts necessary for authentication. Instead, his testimony became substantive evidence on the ultimate issue of negligence, evidence the plaintiff could rightfully challenge through cross-examination.

It is settled law that a party may address the bias of a witness offering substantive testimony. *State v. Wilson*, 269 N.C. 297, 299, 152 S.E.2d 223, 224-25 (1967); *State v. Rowell*, 244 N.C. 280, 281, 93 S.E.2d 201-02 (1956). The act of giving substantive testimony renders that testimony susceptible to cross-examination, as credibility is then at issue. N.C. Gen. Stat. § 8C-1, Rule 611; *See also Star Mfg. Co. v. R.R.*, 222 N.C. 330, 332, 23 S.E.2d 32, 35-36 (1942).

Once Mr. Holmes rendered substantive testimony, he placed his own credibility at issue. Plaintiff had the right to inquire into Mr. Holmes' financial relationship with the insurance company as its paid investigator. A financial interest in the outcome of a case is a form of bias and a proper topic for cross-examination. "The fact of insurance can be relevant in a number of ways. For example, the witness may be an investigator or other hired individual employed by the insur-

ance company. Cross-examination affords the usual means of revealing the relationship between the company and the witness." 1 E. Cleary, *McCormick on Evidence*, § 201 (4th ed. 1992).

Even if Mr. Holmes' testimony had been limited to the facts necessary to authenticate the video, he would still be subject to cross-examination for bias. As the person operating the video camera, Mr. Holmes made choices about what actions of the plaintiff he would film, and which ones he would not. Mr. Holmes noted on cross-examination: "[T]here are things of course that I observed that aren't depicted on the videotape, but the videotape is a fair and accurate reflection of most of what I observed." Such choices carry their own meaning. By consciously selecting what to film, Mr. Holmes implicitly made decisions as to which actions of the plaintiff were pertinent to the litigation. Nationwide informed Mr. Holmes as to the nature of plaintiff's injuries, and told him to "report what her activity was." Choosing what to film reflects the assignment given Mr. Holmes by the insurance company to surveil the plaintiff for purposes of gathering evidence against her at trial. Perspective is the key to bias, and Mr. Holmes' perspective was that of an insurance company's investigator seeking evidence contrary to the plaintiff's claim of injury.

We also note that the trial court specifically instructed the jury on the narrow scope of the insurance information:

> Now evidence has been received tending to show that an insurance company in some manner is involved in this case. This evidence was offered for the limited purpose of showing the source of the information the private investigator witness received before conducting his surveillance of the plaintiff, and for the limited purpose of showing the prejudice or bias this witness may have.

We find the trial court did not abuse its discretion in admitting evidence of liability insurance for the limited purpose of demonstrating bias. *Shields*, 61 N.C. App. at 380, 301 S.E.2d at 448.

As for defendant's claim of unfair prejudice, we do not find that either admission of the insurance evidence or the instructions of the trial court confused the issues and recapitulated irrelevant evidence. N.C. Gen. Stat. § 8C-1, Rule 403 (1992). Whether evidence should be excluded as unduly prejudicial or confusing rests within the sound discretion of the trial court. *Id.; Rowan Cty. Bd. of Educ. v. U.S.*

*Gypsum Co.*, 103 N.C. App. 288, 307, 407 S.E.2d 860, 870 (1991); *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986). The trial court's ruling in this regard may be reversed only for an abuse of discretion that "lacked any basis in reason," *Judkins v. Judkins*, 113 N.C. App. 734, 740, 441 S.E.2d 139, 142, *disc. review denied*, 336 N.C. 781, 447 S.E.2d 424 (1994), or if it "was so arbitrary that it could not have been the result of a reasoned decision." *State v. Jones*, 89 N.C. App. 584, 594, 367 S.E.2d 139, 145 (1988). As the insurance evidence was proper under Rule 411, and an appropriate limiting instruction was granted, we find the trial court's rulings were neither capricious nor ill-considered.

In his second argument, defendant contends that admission of the insurance evidence required the court to grant defendant's motion for mistrial. Defendant cites *Fincher v. Rhyne*, 266 N.C. 64, 145 S.E.2d 316 (1965), for the proposition "evidence or mention of insurance is not to be permitted." *Id.* at 68-69, 145 S.E.2d at 320-21. Defendant's reliance on *Fincher* is misplaced. *Fincher* merely restates Rule 411's general prohibition: "Where testimony is given, or reference is made, indicating directly and as an independent fact that defendant has liability insurance, it is prejudicial, and the court should, upon motion therefor aptly made, withdraw a juror and order a mistrial." *Id.* at 69, 145 S.E.2d at 319 (citations omitted). In the instant case, the insurance evidence was not used as an independent fact, and therefore no consideration of a mistrial was needed.

In conclusion, we find no error in the trial court's decision to permit plaintiff to cross-examine defendant's videotape witness for the limited purpose of demonstrating bias.

No error.

Judges WALKER and McGEE concur.