LELIA A. GRIGGS v. MOREHEAD MEMORIAL HOSPITAL

No. 8517SC1074

(Filed 15 July 1986)

**Hospitals § 3.2— negligence by hospital—failure to make direct nurse-patient assignments**

In an action to recover for injuries received by the eighty-nine-year-old plaintiff when she fell and fractured her hip while a patient in the intensive-coronary care unit of defendant hospital, plaintiff's forecast of evidence was sufficient to permit a jury to infer that defendant hospital negligently deviated from the standard of care and that such negligence was a proximate cause of plaintiff's fall where defendant admitted that direct nurse-patient assignments had not been made on the night of plaintiff's injury in violation of the hospital's own policy and State regulations, and where other issues of fact were presented as to whether plaintiff's bedrails were up or down, whether plaintiff crawled to the foot of the bed or climbed over the rail, and whether plaintiff's heart monitor was off or on.

APPEAL by plaintiff from *Wood, Judge.* Order entered 30 July 1985 in Superior Court, ROCKINGHAM County. Heard in the Court of Appeals 5 March 1986.

*Graham, Miles & Bogan, by Donald T. Bogan, for plaintiff appellant.*

*Tuggle, Duggins, Meschan & Elrod, P.A., by Joseph E. Elrod, III, Sally A. Lawing, and J. Reed Johnston, Jr., for defendant appellee.*

BECTON, Judge.

Plaintiff, Lelia A. Griggs, brought suit against defendant Morehead Memorial Hospital to recover damages for injuries suffered during her hospital stay in April, 1983. The superior court entered summary judgment for the hospital, and Lelia Griggs appeals. We reverse and remand to the superior court for trial.

I

Lelia Griggs was admitted to the Intensive-Coronary Care Unit (ICCU) of Morehead Memorial Hospital on 3 April 1983, suffering respiratory and cardiac arrest. Mrs. Griggs was eighty-nine years of age, somewhat overweight, and had a history of diabetes, ischemic heart disease and chronic decreased vision and hearing. Although her condition had improved within forty-eight hours of her admission to the ICCU, on 6 April 1983 Mrs. Griggs was receiving narcotic pain medication as well as intravenous fluids, and she was still connected to a heart monitor.

At approximately 9:35 p.m. on 6 April 1983, Mrs. Griggs was discovered on the floor of her room in the ICCU with a fractured hip. There were six patients, including Mrs. Griggs, in the ICCU at the time of the fall. There were also four hospital employees on the unit—R.N.'s Mac Hodges, Robin Land and Ken Thompson, and L.P.N. Dottie Dyer. The lead wires to Mrs. Griggs' heart monitor had been disconnected, and the I.V. had been removed and tied to the side rail of her bed. Mrs. Griggs does not remember how she fell, and no one saw her fall or heard the alarm on the heart monitor sound.

As a result of the fall, Mrs. Griggs required surgery to implant an artificial hip, developed a staph infection in the hip and had to have the prosthesis removed. She incurred medical expenses in excess of $60,000.00.

II

Mrs. Griggs asserts that the trial court erred in entering summary judgment against her because her forecast of evidence tended to establish a *prima facie* case of negligence. We agree and reverse the entry of summary judgment.

Summary judgment is a drastic remedy and is rarely appropriate in a negligence action because, ordinarily, it is the jury's duty to apply the standard of care and to pass upon issues

of breach, causation and contributory negligence. *See Abner Corp. v. City Roofing & Sheetmetal Co.*, 73 N.C. App. 470, 326 S.E. 2d 632 (1985).

The party moving for summary judgment, in this case the hospital, has the initial burden of showing that an essential element of the plaintiff's case does not exist as a matter of law or of showing through discovery that plaintiff has not produced evidence to support an essential element of her claim. *See, Rorrer v. Cooke*, 313 N.C. 338, 329 S.E. 2d 355 (1985).

The hospital contends that Mrs. Griggs has failed to demonstrate that any of the alleged breaches of duty was the proximate cause of her fall and injury.

Causation is an inference of fact to be drawn from other facts and circumstances. *Hairston v. Alexander Tank and Equipment Co.*, 310 N.C. 227, 234, 311 S.E. 2d 559, 566 (1984). However, it is only when the facts are all admitted and only one inference may be drawn from them that the court will declare whether an act was the proximate cause of an injury. *Conley v. Pearce-Young-Angel Co.*, 224 N.C. 211, 214, 29 S.E. 2d 740, 742 (1944). But, that is rarely the case. *Id.* Therefore, proximate cause of an injury is ordinarily a jury question. *Id.* (Citations omitted.)

There is sufficient evidence from which a jury could determine that the hospital had negligently deviated from the standard of care. The hospital admits that on the night of Mrs. Griggs' fall and injury, direct nurse-patient assignments had not been made in violation of the hospital's own policy, promulgated pursuant to state regulations. *See* 10 N.C.A.C. 3c, .0501(a) (1986). Although we find no merit in Mrs. Griggs' contention that the hospital's violation of the regulation constitutes negligence *per se*, violation of a statute may be proof of a duty owed and breached. That is, although N.C. Gen. Stat. Sec. 90-21.12 (1985) (enacted 1975) codifies the common law obligation of the health care provider to the patient and establishes the standard of care, a violation of a health care regulation may be proof of a negligent deviation from that standard of care. *See, Makas v. Hillhaven, Inc.*, 589 F. Supp. 736 (M.D.N.C. 1984); *Tice v. Hall*, 310 N.C. 589, 313 S.E. 2d 565 (1984).

The hospital then argues, in essence, that even if it were legally negligent because it violated hospital policy and state regu-

lations and thus deviated from the standard of care, it cannot be liable because there is no evidence that the nurses on duty would have acted any differently had one of them been directly assigned to Mrs. Griggs. There is no proof, they argue, that the violation was a proximate cause of the fall.

Mrs. Griggs contends that the doctrine of *res ipsa loquitur* applies to establish a presumption of negligence against the hospital in this instance. While we are not persuaded that *res ipsa loquitur* is applicable here, we hold that whether an injury such as the one suffered by Mrs. Griggs was a foreseeable consequence of the hospital's lapse is a question for the jury. We cannot say that it is *not* one as a matter of law.

In addition, there are genuine issues of material fact with respect to other aspects of the case. The nurses on duty testified that the bedrails were up when they found Mrs. Griggs on the floor, and opined that she must have crawled to the foot of the bed to exit. However, Dr. Parsons' report, which was written on the day after the fall, stated that the bedrails were down. Dr. Parsons wrote his report after talking to some of the employees who had been present the night before, and he apparently concluded that Mrs. Griggs had lowered the rails herself.

Whether the bedrails were up or down, whether Mrs. Griggs crawled to the foot of the bed or climbed over the rail, whether the heart monitor was off or on, are genuine issues of fact. The relationship that any or all of these facts have to the hospital's failure to make direct nurse-patient assignments on the night of Mrs. Griggs' fall and injury go to the proof of causation. Plaintiff should have an opportunity to present these facts to a jury. The trial court's entry of summary judgment in favor of the hospital is, therefore,

Reversed.

Judges JOHNSON and MARTIN concur.