UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MATILDA LACAYO, as Administratrix
of the Estate of Encarnacion
Rodriguez, Jr.,
<u>Plaintiff-Appellant,</u>

v.

SODOMA FARMS OF NORTH CAROLINA,                                      No. 97-1101
INCORPORATED,
<u>Defendant-Appellee,</u>

and

JOHN SODOMA; PAUL SODOMA,
<u>Defendants.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Greenville.
James C. Fox, Chief Judge.
(CA-95-71-4-F2)

Argued: July 15, 1997

Decided: September 22, 1997

Before MURNAGHAN, Circuit Judge, and BUTZNER and
PHILLIPS, Senior Circuit Judges.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Teresa DeLoatch Bryant, KILPATRICK STOCKTON,
L.L.P., Raleigh, North Carolina, for Appellant. James Nicholas Ellis,

POYNER & SPRUILL, L.L.P., Rocky Mount, North Carolina, for Appellee. **ON BRIEF:** Pamela R. DiStefano, Durham, North Carolina; Sylvia H. Walbolt, CARLTON FIELDS, St. Petersburg, Florida, for Appellant.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Encarnacion Rodriguez,[1] a migrant farmer, died when a fire consumed the trailer in which he slept. The Administratrix for his estate sued Sodoma Farms ("Sodoma"), the provider of the trailer and Rodriguez's employer, alleging that Sodoma violated the Migrant and Seasonal Agricultural Worker Protection Act ("MSAWPA"), 29 U.S.C.A. § 1801 et seq. (West 1985), by failing to provide smoke detectors in the trailer as required by law. The district court granted summary judgment to Sodoma on the basis that there was no evidence that the failure to provide smoke detectors was the proximate cause of Rodriguez's death. The Administratrix has appealed.

FACTS

Rodriguez was a migrant worker who was recruited to leave Florida and work for Sodoma in North Carolina. Sodoma owned and operated barracks that were used to house migrant workers. Rodriguez originally lived in the barracks, but he and a few other coworkers requested permission to move to other housing since their fellow workers were often intoxicated, loud, and rowdy. Sodoma moved Rodriguez and several of his coworkers to a trailer also operated by Sodoma.

---

[1] The suit was brought by the Administratrix of Rodriguez's estate. However, we have referred to Rodriguez as the Plaintiff-Appellant throughout the case.

2

The trailer had not been inspected as required by the MSAWPA. Furthermore, the trailer did not contain a smoke detector or a fire extinguisher, both of which were required by law.

Rodriguez shared the three bedroom trailer with four other workers, Wayne Seever, Ray Alexander, Luis Alexander, and Peter Maldonado. Seever and Maldonado each had his own room. The Alexanders shared a room, and Rodriguez slept in the kitchen/living room.

On the night of July 15, 1993, a fire broke out near Rodriguez's bed. Seever and Rodriguez were the only individuals home at the time of the fire. Seever testified that he woke up in his bedroom to the heavy smell of smoke and that flames were moving across the ceiling into his bedroom. Seever's bedroom was next to the living room and was separated from it by a wall and a door. Seever thought he heard someone coughing and attempted to open the door to the living room, but was unable to do so because of the heat.

Seever then exited the trailer through an exit door in his bedroom. Rodriguez was unable to escape. He was found on the floor approximately five feet from the main entrance door of the trailer clutching a pillow in his arms.

Sodoma argues that the failure to provide a smoke detector was not the proximate cause of Rodriguez's injuries. Sodoma presented expert testimony that Rodriguez's blood alcohol level was .28 and that he was probably not awake because he was too drunk. However, Rodriguez's estate introduced the expert opinion of Dr. Hugh J. Burford which completely contradicted Sodoma's. Dr. Burford stated that the .28 blood alcohol level did not make Rodriguez per se intoxicated. In addition, he claimed that, based on Rodriguez's drinking history, Rodriguez could maintain between 62 and 75 percent of his normal function. Furthermore, the expert stated that Rodriguez would certainly be aware of the fire in spite of his blood alcohol content.

Rodriguez also wanted to present evidence from Kim May, a Forensic Fire and Explosion Investigator. The expert believed:

3

> Because there was not a working smoke detector in the mobile home, it is apparent that both occupants discovered the fire during an advanced stage as stated by Mr. Seever by his observation of the heavy smoke and high heat conditions within the mobile home. Had there been a working smoke detector, it is very possible that both men would have escaped the mobile home, because the environment would not have been so hot and the smoke so thick early in the fire.

Moreover, the expert also submitted an affidavit in which he expressly concluded that "had there been a working smoke detector inside the trailer, it is more likely than not that Rodriguez would have escaped the mobile home."

The district court refused to admit the expert's testimony. The district court determined that "certain imponderables render impossible any determination, with sufficient certainty, of a causative link between the defendant's failure to comply with safety requirements . . . and the death in the fire." The district court determined that it "does not perceive that the jury would <u>require</u> the benefit of an `expert's' opinion in order to discharge its duty."

Furthermore, the district court concluded that even if an expert opinion was necessary, the expert in the instant case was not qualified to render such an opinion. Yet, the expert was a firefighter or a fire investigator for over fifteen years. He had attended hours of training at schools and seminars regarding fire investigation, and taught several classes on fire safety. He was a certified fire and explosion investigator, and a member of the International Association of Arson Investigators. The district court asserted that the expert could testify regarding how the fire was caused, but had no expertise regarding Rodriguez's reactions to the smoke detector.

The state fire investigator could not determine the cause of the fire. However, there was evidence that on other occasions Rodriguez smoked in bed. Sodoma clearly tries to imply that he did so on this occasion, but there was no evidence in that regard. There was evidence that Seever, the other occupant of the trailer at the time of the fire, had been smoking a cigarette on the steps of the trailer before going to bed.

4

DISCUSSION

I. The district court erred in excluding consideration of Rodriguez's
   expert on the issue of causation

The Court reviews the district court's decision to exclude the prof-
fered expert testimony under an abuse of discretion standard. Kopf v.
Skyrm, 993 F.2d 374, 378 (4th Cir. 1993). A district court judge is
given broad discretion on whether to admit expert testimony. Hardin
v. Ski Venture, Inc., 50 F.3d 1291, 1296 (4th Cir. 1995). However,
Rule 702 should be interpreted broadly and helpfulness is its "touch-
stone." Kopf, 993 F.2d at 377.

Rule 702 provides:

> If scientific, technical, or other specialized knowledge will
> assist the trier of fact to understand the evidence or to deter-
> mine a fact in issue, a witness qualified as an expert by
> knowledge, skill, experience, training, or education, may
> testify thereto in the form of an opinion or otherwise.

Testimony from an expert is presumed to be helpful unless it con-
cerns matters within the jurors' everyday knowledge. Kopf, 993 F.2d
at 377. A witness's qualifications to render an expert opinion is also
liberally judged by Rule 702. Id. at 377. A person may qualify to give
expert testimony through either knowledge, skill, experience, training,
or education. Id.

In addition, the test for excluding expert testimony is very strict. A
witness must have neither satisfactory knowledge, skill, experience,
training nor education on the issue. Id. at 377. An expert may testify
in the form of opinion; however, that opinion may be excluded if it
is not helpful. Here the evidence was relevant and helpful.

The district court determined that "the court does not perceive that
the jury would require the benefit of an `expert's' opinion in order to
discharge its duty." However, the proper standard to apply is other-
wise. Rule 702 allows expert testimony if it would "assist" the trier
of fact. The testimony need not be essential, it need only be helpful.

The district court believed that it was too speculative to determine whether a smoke detector would have saved Rodriguez's life and therefore the expert's testimony would not be helpful. However, that puts the conclusion before the evidence. The expert, Kim May, could testify that the fact that the victim was near the door, clutching a pillow, would indicate that he tried to escape. Moreover, the expert could rely on the fact that Seever, the other occupant of the trailer, heard someone coughing as an indication that an earlier warning would have saved Rodriguez. The expert could further testify that a smoke detector would have given the victim earlier warning. He obviously could not have testified as to whether the victim was too drunk to hear it, but he could testify that since the victim had moved towards the door, the fire detector would have given him an earlier warning than whatever event did eventually warn him. The expert could then reach a conclusion, based on his experience, that the victim would more than likely have been able to escape if a smoke detector had been present.

Such testimony would have been proper and would certainly have helped the jury understand the importance of smoke detectors. There was an abuse of discretion in disregarding testimony of the expert as to his opinion regarding the consequences of the absence of smoke detectors. The expert could, at trial, clearly be cross-examined to test whether his conclusions were too tenuous.

The district court determined that the expert testimony was only conjecture and guesswork and was insufficient to support the Plaintiff's case. There was, however, sufficient evidence for the expert to reach his conclusion regarding whether the lack of a smoke detector was the proximate cause of Plaintiff's injuries.

The district court also determined that, even if the evidence was permissible, it would be impermissible in the present case since the expert was not qualified. The expert's qualifications were nevertheless very impressive. He was a firefighter, and fire investigator, a lecturer on fire safety, and a consultant on fire issues. He also attended hundreds of hours of courses on fire issues and fire safety. He has conducted approximately one thousand five hundred investigations related to fires and explosions and has conducted live burns of mobile homes to collect data for use in analyzing fire safety.

The district court acknowledged that the expert was qualified to testify about how fires happen or what was the cause of the fire, but concluded that he was unable to testify regarding whether Rodriguez would have gotten out safely if there had been a smoke detector. The district court's reasoning was presumably that, if Rodriguez was drunk and comatose, he would not have gotten out even if there was a functioning smoke detector, and the expert had no knowledge about Rodriguez's physical state. However, there was sufficient evidence that Rodriguez was awake to raise a material disputed fact. Especially on summary judgment, it was not clear that Rodriguez was comatose. It was clear, or at least arguable, that, since the body was found near the door, with a pillow in a position to protect his lungs, that Rodriguez was not comatose and that the smoke detector would have aided Rodriguez in escaping.

The expert in the instant case qualifies under each of the five components in Kopf. Since he need only qualify under one prong, the expert in the present case was clearly qualified. He had tremendous knowledge regarding fire issues as shown by his lectures on the subject. As a firefighter and fire investigator, the expert had skill and experience regarding fire issues. He also had significant training and education. Rodriguez's expert was extremely well qualified to testify and the district court erred in determining that he was not so qualified.

In Friendship Heights Associates v. Vlastimil Koubek, A.I.A., 785 F.2d 1154, 1160 (4th Cir. 1986), the court held that the district court abused its discretion in ruling that a witness was not qualified to testify as an expert on the cause of paint delamination. The district court determined that the expert did not have sufficient knowledge regarding "coatings" [of paint] and therefore declined to accept her as an expert. The district court, however, acknowledged that she was well qualified on other paint matters. The court of appeals stated that the expert was qualified to testify based on her education, knowledge and training. The fact that she lacked experience with the particular items at issue was immaterial and did not prevent her from testifying in the case. Id. at 1160.

Just as in Friendship Heights, the expert in the instant case was well qualified to testify at trial. He had tremendous experience, education, knowledge and training regarding fire investigation and fire

7

safety, and his testimony would have been clearly helpful as to the consequence of Sodoma's failure to provide a smoke detector.

The district court is given wide discretion regarding expert witnesses. However, in the instant case, the expert is clearly qualified and the district court exceeded its discretion.

II. The district court erred in granting summary judgment to Sodoma

The Court reviews the district court's grant of summary judgment de novo. Patterson v. McClean Credit Union, 39 F.3d 515, 518 (4th Cir. 1994). The Court must view the evidence in the light most favorable to the nonmoving party and determine if a genuine issue as to any material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 258 (1986).

The district court granted summary judgment stating:

> [P]laintiff has failed to demonstrate the existence of any competent evidence which could tend to establish the necessary causative link between the defendant's violations of the subject safety statues and [Rodriguez's] death. Only by conjecture, guesswork and speculation could an "expert" witness or a jury make the leap of logic, and the law simply does not permit imposition of liability and sanctions against a defendant on that basis.

However, a plaintiff does not have the burden of showing causation by a legal certainty, he only needs to show here that Sodoma's failure to comply with the law was more likely than not a proximate cause of Rodriguez's death. N.C.P.I.--Civil 101.10 (1988) ("The greater weight of the evidence does not refer to the quantity of the evidence, but rather to the quality and convincing force of the evidence. It means that you must be persuaded, considering all of the evidence, that the necessary facts are more likely than not to exist."). There was clearly enough evidence regarding causation to send the case to the jury.[2]

_____

[2] The issue of proximate cause is ordinarily decided by the jury. Griggs v. Morehead Memorial Hosp., 345 S.E.2d 430 (N.C.App. 1986).

8

Viewing the facts in the light most favorable to Rodriguez, there was sufficient evidence to show that it is more likely than not that had a smoke detector been installed in the trailer, Rodriguez would not have died in the fire.

First, Sodoma has argued that Rodriguez was drunk and comatose and thus would not have escaped even if a smoke detector was present in the trailer. However, on summary judgment, Rodriguez's expert witness's testimony to the contrary should be given greater weight. Rodriguez's witness testified that at an alcohol level of .28 Rodriguez would not necessarily be passed out. He further stated that people who consume large quantities of alcohol are able to function at a higher blood alcohol level than individuals who do not drink very much. (A fact completely ignored by Sodoma's expert.) He further testified that, based on recent studies, and Rodriguez's drinking history, that Rodriguez could maintain between 62 and 75 percent of his normal function with a blood alcohol level of .28. Furthermore, he stated that Rodriguez would certainly be aware of the fire in spite of his blood alcohol content. Thus, on summary judgment we must assume that Rodriguez would have heard the smoke alarm.

Moreover, in addition to the expert testimony on alcohol levels, the testimony also indicates that Rodriguez was awake. Seever, the other occupant of the trailer, indicated that he thought he heard someone coughing, and that he tried to check but the fire was too hot to open the door. Rodriguez and Seever were the only persons in the trailer at the time.

In addition, Rodriguez was found near the exit door clutching a pillow. Rodriguez was not found in bed comatose. Viewing the evidence in the light most favorable to Rodriguez, the jury could determine that Rodriguez was trying to escape from the trailer and was using the pillow to protect his lungs. It could further conclude that had there been a smoke detector, Rodriguez would have been warned earlier and would have escaped the fire.

Sodoma has further argued that Plaintiff has shown no evidence that the failure to provide a smoke detector was the proximate cause of Rodriguez's death. It has pointed to the fact that Seever was able to escape the trailer as proof that the smoke detector would not have

made any difference. Furthermore, it has argued that the fire was probably Rodriguez's fault and that Rodriguez's actions were the proximate cause of his death. Finally, it has contended that Plaintiff's case is merely speculation and is insufficient to survive summary judgment. Sylvia Development Corp. v. Calvert County, MD., 48 F.3d 810, 818 (4th Cir. 1995) ("It is the duty of the Court to withdraw the case from the jury when [the plaintiff's contention] is so tenuous that it rests merely upon speculation and conjecture.").

However, Rodriguez's case is based on more than mere conjecture. There is evidence that Rodriguez was awake and coughing, that Rodriguez tried to escape but was consumed by smoke before he was able to do so, and that he used a pillow to breathe through to protect his lungs. Thus, the jury could reasonably conclude that Rodriguez almost made it out of the trailer alive and would have done so had there been a smoke detector in the trailer.

Moreover, if the court had allowed the testimony from the expert witness, there would also have been the expert's conclusion that it was likely that Rodriguez would have escaped had the trailer contained an operational smoke detector.

Taking the evidence in the light most favorable to the non-moving party, there was sufficient evidence to withstand summary judgment. Accordingly, the judgment of the district court is

VACATED AND REMANDED.

10