A<small>RGUED AND</small> D<small>ETERMINED IN THE</small>

# COURT OF APPEALS

**OF**

N<small>ORTH</small> C<small>AROLINA</small>

AT

R<small>ALEIGH</small>

---

DALLAS E. DANIELS, <small>BY AND THROUGH HIS</small> G<small>UARDIAN AD</small> L<small>ITEM</small>, W<small>ILLIAM</small> D. W<small>EBB</small>; DONALD E. DANIELS; <small>AND</small> ANGELA M. DANIELS, P<small>LAINTIFFS</small> v. EDWIN L. REEL, III; EDWIN L. REEL, J<small>R.</small>; THE AMERICAN LEGION AND ITS SUBDIVISIONS; THE AMERICAN LEGION DEPARTMENT OF NORTH CAROLINA, INCORPO-RATED; <small>AND</small> CARY AMERICAN LEGION POST 67, INC., D<small>EFENDANTS</small>

---

GRAHAM TRENT ELLIS <small>AND</small> HOWARD ELLIS, J<small>R.</small>, P<small>LAINTIFFS</small> v. EDWIN L. REEL, III; EDWIN L. REEL, J<small>R.</small>; THE AMERICAN LEGION AND ITS SUBDIVISIONS; THE AMERICAN LEGION DEPARTMENT OF NORTH CAROLINA, INCORPORATED; <small>AND</small> CARY AMERICAN LEGION POST 67, INC., D<small>EFENDANTS</small>

---

HARRY H. HURLEY <small>AND</small> NANCY C. HURLEY, C<small>O-ADMINISTRATORS OF THE</small> E<small>STATE OF</small> D<small>OUGLAS</small> C. H<small>URLEY</small>, P<small>LAINTIFFS</small> v. EDWIN L. REEL, III; EDWIN L. REEL, J<small>R.</small>; THE AMERICAN LEGION AND ITS SUBDIVISIONS; THE AMERICAN LEGION DEPARTMENT OF NORTH CAROLINA, INCORPORATED; <small>AND</small> CARY AMERI-CAN LEGION POST 67, INC., D<small>EFENDANTS</small>

No. COA98-238

(Filed 20 April 1999)

**1. Associations— youth baseball players—injuries while riding with teammate—national and state organizations—no negligence liability**

National and state American Legion organizations could not be held liable for direct negligence in permitting a sixteen-year-old member of a youth baseball team that participates in the American Legion baseball program to transport teammates to and from a game where the evidence shows that the local

1

American Legion post that sponsors the team exercised exclusive day-to-day control over the operation of the team; the fact that the national and state American Legion organizations had developed regulations for the baseball program and that the national organization required that local posts purchase liability insurance naming the national organization as an "additional insured" did not show that either the national or the state organization was involved in the operation or control of the youth baseball program.

2. **Agency— youth baseball players—injuries while riding with teammate—national and state organizations— vicarious liability**

National and state American Legion organizations were not vicariously liable under the doctrine of respondeat superior for the alleged negligence of the manager of a youth baseball team sponsored by a local American Legion post or of a team member who, with the manager's permission, was driving teammates home after an out-of-town game when a one-car accident killed one teammate and injured others where there was no evidence that either the manager or the driver was authorized by the national or state organization to arrange transportation for or to transport team players to and from games; there was no evidence that the manager or driver was an agent of the national or state organizations by apparent authority; and even if the manager and driver were employees of the national and state organizations, any negligence by the manager or the driver with respect to the transportation of players to and from games occurred outside the scope of their employment.

3. **Associations— youth baseball players—injuries while riding with teammate—local organization—no negligence liability**

A local American Legion post that sponsors a youth baseball team was not liable on a direct negligence theory for the death of one player and injuries to other players when a vehicle driven by a sixteen-year-old teammate overturned while he was driving them home after an out-of-town game with the manager's permission where plaintiffs contended that the American Legion post was negligent in allowing the teammate to drive players because of his age and excitability, but there was no forecast of evidence that providing transportation was a duty inherent in operating a youth baseball program with reasonable care; the American

DANIELS v. REEL

[133 N.C. App. 1 (1999)]

Legion post had no knowledge of any history or record of unsafe driving by the driver-teammate; and the team manager stated that the driver "had driven before and shown [himself] to be a safe, responsible driver."

4. **Agency— youth baseball players—injuries while riding with teammate—local organization—vicarious liability**

Plaintiffs' forecast of evidence was sufficient for the jury to find vicarious liability by defendant local American Legion post under the doctrine of respondeat superior for the death of one player and injuries to other players on the post's youth baseball team in a one-car accident while riding in a vehicle driven by a sixteen-year-old teammate with permission of the team's coaches where the evidence presented material issues of fact as to whether the coaches were agents of the local American Legion post, whether the teammate-driver was also enlisted as an agent of the post by the coaches, and whether transportation of the players was within the scope of any agency.

Appeal by plaintiffs from orders filed by Judge J.B. Allen, Jr., in Wake County Superior Court on 18 September 1997, 24 September 1997, and 25 September 1997, granting summary judgment for defendants The American Legion, Cary American Legion Post 67, and The American Legion Department of North Carolina, Inc., respectively. Heard in the Court of Appeals 17 November 1998.

*Edwards & Kirby, L.L.P, by David F. Kirby and William B. Bystrynski, for plaintiff-appellants Dallas E. Daniels, Donald E. Daniels, and Angela M. Daniels.*

*Law Offices of Walter Lee Horton, by Walter Lee Horton, for plaintiff-appellants Graham Trent Ellis and Howard Ellis, Jr.*

*DeMent, Askew, Gammon, DeMent & Overby, by Angela L. Dement, for plaintiff-appellants Harry H. Hurley and Nancy C. Hurley.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by James D. Blount, William H. Moss, and Deanna L. Davis, for defendant-appellee The American Legion.*

*Patterson, Dilthey, Clay & Bryson, L.L.P., by Charles A. Madison and Melissa Ross Matton, for defendant-appellee The American Legion Department of North Carolina, Inc.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by Thomas M. Clare and Kurt F. Hausler, for defendant-appellee Cary American Legion Post 67, Inc.*

LEWIS, Judge.

This case is at the summary judgment stage. Therefore, the forecast evidence must be viewed in the light most favorable to the plaintiff when reviewing the grant of summary judgment. *See Thompson v. Three Guys Furniture Co.*, 122 N.C. App. 340, 344, 469 S.E.2d 583, 585 (1996). The evidence tends to show that defendant Cary American Legion Post 67, Inc. (hereinafter "Cary Post 67") sponsors a youth baseball team that participates in the American Legion Baseball Program. On 3 July 1994, the team was scheduled to play in Chapel Hill and later in Cary.

During the 1994 season, the team's coaches and manager Jere Morton (hereinafter "the coaches") directed the players to meet at Cary High School at specified times before all games, home or away. If the game was away, the coaches arranged transportation.

Before the Chapel Hill game, the team's players and some of their parents assembled at Cary High School. The coaches had not rented a van to transport the players, as was their custom for trips exceeding twenty minutes or twenty miles. They solicited volunteers to drive players to Chapel Hill. One volunteer was defendant Edwin L. Reel, III, a team member. At the time, Reel was sixteen years old and a licensed driver. Reel drove several players to the Chapel Hill game in his father's 1982 Chevrolet Blazer.

After the Chapel Hill game, five players joined Reel for a ride back to Cary. These players included plaintiff Graham Trent Ellis, plaintiff Dallas E. Daniels, and Douglas Hurley. Team manager Jere Morton followed four to five car lengths behind Reel.

When Reel reached the exit on Interstate 40, he nearly drove past it. One of the passengers yelled at him to turn. Reel turned the steering wheel hard to the right, and the Blazer hit loose gravel and rolled over several times. Ellis, Daniels, and Hurley were thrown from the vehicle. Ellis and Daniels sustained very severe injuries; Hurley was killed.

DANIELS v. REEL

[133 N.C. App. 1 (1999)]

Three complaints were filed by or on behalf of the players injured or killed in the wreck. All of the complaints name as defendants Edwin L. Reel, III, the driver of the Blazer; Edwin L. Reel, Jr., his father and owner of the Blazer; The American Legion; The American Legion Department of North Carolina, Inc. (hereinafter "the North Carolina Department"); and Cary Post 67. The Reels and the national, state, and local American Legion defendants were alleged to be responsible for the plaintiffs' injuries.

In September 1997, the trial court granted summary judgment in favor of The American Legion, the North Carolina Department, and Cary Post 67 as to all claims against them in all three actions. Plaintiffs appealed; their appeals are consolidated and before us now. Defendants Edwin Reel, III and Edwin Reel, Jr. are not parties to the appeal.

The requirements of summary judgment are well known. *See* N.C.R. Civ. P. 56(c). Before addressing the propriety of summary judgment with respect to each of the defendants, we review the structure of these organizations and their relationship with one another. We will then focus our attention on the structure of the American Legion Baseball Program and the involvement of each of the three defendants in it.

Defendant The American Legion is a non-profit corporation that was created by an act of Congress in 1919. *See* 36 U.S.C. §§ 41 *et. seq.* (1996). The purpose of The American Legion is

[t]o uphold and defend the Constitution of the United States of America; to promote peace and good will among the peoples of the United States and all the nations of the earth; to preserve the memories and incidents of the two World Wars and the other great hostilities fought to uphold democracy; to cement the ties and comradeship born of service; and to consecrate the efforts of its members to mutual helpfulness and service to their country.

36 U.S.C. § 43 (1996). The American Legion has powers enumerated in 36 U.S.C. § 44 (1996). Headquartered in Indianapolis, Indiana, it has almost 3 million members and approximately 275 employees. Membership in The American Legion is restricted to those who were members of the United States Armed Forces assigned to active duty during a time of war or hostilities between the United States and other nations. *See* Constitution of The American Legion, art. IV, § 1.

The American Legion is "organized in Departments," of which the North Carolina Department is one; local units of these Departments are called "Posts." *See* Legion Const. art. III, § 1. Departments must be chartered by The American Legion's National Executive Committee. *See* Legion Const. art VIII, § 1. "The National Executive Committee, after notice and a hearing before a subcommittee . . ., may cancel, suspend or revoke the charter of a Department for any good and sufficient cause to it appearing." Legion Const. art XI, § 1.

Those desiring to form a Post must first obtain approval from the Department in which they reside. *See* Legion Const. art IX, §§ 1, 5. Approval is conditioned upon the applicants' pledge that the Post "shall uphold the declared principles of THE AMERICAN LEGION and shall conform to and abide by the regulations and decisions of the Department and of the National Executive Committee, or other duly constituted national governing body of THE AMERICAN LEGION." Legion Const. art IX, § 4.2. "Each Department may prescribe the Constitution of its Posts." Legion Const. art IX, § 7. A Post's permanent charter may be suspended, cancelled or revoked by its Department. *Id.*

On 1 August 1920, The American Legion issued a permanent charter to The American Legion Department of North Carolina. This charter, a one page document, authorizes the North Carolina Department to "establish and maintain" itself. It subjects the North Carolina Department to "the Constitution of The American Legion and the rules, regulations, orders and laws promulgated in pursuance thereof." It further states,

> By the acceptance of this Charter, . . . the said Department pledges itself, through its Posts and the members thereof, to uphold, protect and defend the Constitution of The United States and the principles of true Americanism, for the common welfare of the living and in solemn commemoration of those who died that liberty might not perish from the Earth.

The North Carolina Department was incorporated as a non-profit corporation in North Carolina in 1955. It has adopted its own Constitution and bylaws. Pursuant to its Constitution, the Department elects its own officers and establishes its own committees. *See* Constitution and Bylaws of The American Legion Department of North Carolina, art. X, XI. It derives its revenues from membership dues and from other sources approved by the Department, but not from the national organization. *See* Department

Const. art. XII. According to its Constitution, the purpose of the North Carolina Department is

[t]o uphold and defend the Constitution of the United States of America; to maintain law and order; to foster and perpetuate a one hundred percent Americanism; to preserve the memories and incidents of our associations in the Great Wars; to inculcate a sense of individual obligation to the community, state and nation; to combat the autocracy of both the classes and the masses; to make right the master of might; to promote peace and good will on earth; to safeguard and transmit to posterity the principles of justice, freedom and democracy; [and] to consecrate and sanctify our comradeship by our devotion to mutual helpfulness.

Department Const., Preamble. "No person may become or remain a member of the Department except through membership in a Post." Department Const. art. IV, § 1.

Cary Post 67 received a permanent charter in 1947 and was incorporated as a non-profit corporation in North Carolina in 1991. It has adopted its own constitution and bylaws. It elects its own officers and forms its own committees. Its charter is subject to suspension by the North Carolina Department and revocation by The American Legion. Department Const. art. V, § 5.

In 1994, competition in the American Legion Baseball Program was governed by the "American Legion Baseball 1994 Rule Book" (hereinafter the "National Rule Book"), which was prepared and distributed by The American Legion. The National Rule Book defines the "purpose and scope of American Legion Baseball" as follows:

1. To inculcate in our American youth a better understanding of the American way of life and to promote 100% Americanism.

2. To instill in our Nation's youth a sincere desire to develop within themselves a feeling of citizenship, sportsmanship, loyalty and team spirit.

3. To aid in the improvement and development of the physical fitness of our country's youth.

4. To build for the Nation's future through our youth.

National Rule Book, p. 2. According to the National Rule Book, the four items listed above "are the four permanent [and] unchanging goals of the American Legion Baseball Program." *Id.* The National

Rule Book requires that "American Legion Baseball competition . . . be played in accordance with rules set forth and adopted by" The American Legion. *Id.* at 4. The following is a representative list of provisions found in the National Rule Book:

1. Eligibility requirements for players, including age restrictions;

2. Requirement that teams wear "alike" uniforms, bearing American Legion insignia, if they reach state or national championship play;

3. Requirement that batters and catchers wear specified protective equipment;

4. Rules of play;

5. Prohibition against the use of any tobacco product by any player, coach, manager, or umpire "while on the playing field, benches, in bullpens or dugouts";

6. Requirement that managers, coaches, and players not "conduct themselves in an unsportsmanlike manner that would discredit" the American Legion Baseball Program;

7. Requirement that American Legion Departments of each state "formulate rules, regulations and boundaries that are not in conflict with National rules for all play within that Department."

The North Carolina Department has indeed developed its own rule book, but the differences between the State Rule Book and the National Rule Book are not substantial and do not materially affect our resolution of the issues before us.

All decisions regarding the establishment of teams, the selection of players and coaches, and the scheduling of games are made by the various Posts. Baseball teams are financed exclusively by their respective Posts without funds from either The American Legion or the North Carolina Department.

## I. The American Legion and the North Carolina Department

The American Legion and the North Carolina Department are alleged to be liable based on two theories: (1) direct negligence with respect to the players injured or killed, and (2) vicarious liability for the negligence of defendant Edwin Reel, III and for the negligence of the team's coaches.

DANIELS v. REEL

[133 N.C. App. 1 (1999)]

## A. Direct Negligence

[1] Plaintiffs argue in their brief that The American Legion and the North Carolina Department had a "duty to use reasonable care in the operation of their baseball program." They further contend that The American Legion and the North Carolina Department breached this duty by failing "to develop transportation policies for [the] youth baseball program that would prevent transportation by inexperienced drivers."

At its most basic level, liability for negligence is premised on the fact that a party is performing a particular undertaking in a negligent fashion.

> Actionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law. The duty may arise specifically by mandate of statute, or it may arise generally by operation of law under application of *the basic rule of the common law which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care*, or to so govern his actions as not to endanger the person or property of others. This rule of the common law arises out of the concept that every person is under the general duty to so act, or to use that which he controls, as not to injure another.

*Pinnix v. Toomey*, 242 N.C. 358, 362, 87 S.E.2d 893, 897-98 (1955) (citations omitted, emphasis added). In this case, plaintiffs' claims that they were harmed by the negligence of The American Legion and the North Carolina Department presuppose that these defendants were engaged in the operation of The American Legion Baseball Program.

There is no evidence, however, that the baseball program in which plaintiffs participated was operated by either The American Legion or the North Carolina Department or that they controlled it. To be sure, the play of baseball within the American League Program was *regulated* by The American Legion and the North Carolina Department, but regulating an activity is hardly the same as engaging in it. One could not seriously maintain, for example, that by regulating the taking of oysters from private shellfish bottoms, the North Carolina Department of Environment and Natural Resources is operating those oyster beds. *See* 15A NCAC 3K .0200 *et seq.* (1991).

Defendants' evidence shows that local Posts, including Cary Post 67, exercised exclusive, day-to-day control over the operation of their respective teams in the American Legion Baseball Program.

Plaintiffs have not cited, nor do we find, any competent evidence to the contrary. Plaintiffs point to the National Rule Book's requirement that local Posts purchase liability insurance naming The American Legion as an "additional insured," but we fail to see the relevance of such a requirement to the issue of whether The American Legion is actually involved in the day-to-day operation or control of the Baseball Program.. *Cf. Hayman v. Ramada Inn, Inc.*, 86 N.C. App. 274, 279-80, 357 S.E.2d 394, 398 (rejecting plaintiff's claim that hotel chain which licensed its name to an independently owned hotel "implicitly accepted responsibility and acknowledged liability for injuries on the premises" because chain required owner to maintain liability insurance naming chain as an additional insured ), *review on additional issues denied*, 320 N.C. 631, 360 S.E.2d 87 (1987). Thus, because neither The American Legion nor the North Carolina Department was actually engaged in the operation of the baseball program, they cannot be held liable for operating that program negligently.

## B. Vicarious Liability

[2] Plaintiffs' second theory is that The American Legion and the North Carolina Department are vicariously liable for the negligence, if any, of defendant Edwin Reel, III, and the coaches. Specifically, plaintiffs argue that The American Legion and the North Carolina Department had the right to control the activities of Reel and Morton; that this control was so extensive as to create an employer-employee relationship between the parties; and that, under the doctrine of *respondeat superior*, The American Legion and the North Carolina Department are responsible for the negligence of their employees, Reel and Morton.

Under the doctrine of *respondeat superior*, a principal is liable for the torts of its agent which are committed within the scope of the agent's authority, when the principal "retains the right 'to control and direct the manner' " in which the agent works. *Vaughn v. N.C. Dept. of Human Resources*, 296 N.C. 683, 686, 252 S.E.2d 792, 795 (1979), (quoting *Hayes v. Elon College*, 224 N.C. 11, 15, 29 S.E.2d 137, 139 (1944)). Of course, *respondeat superior* does not apply unless an agency relationship of this nature exists. An agency relationship arises when parties manifest agreement that one of them shall act

subject to and on behalf of the other. *See Hayman*, 86 N.C. App. at 277, 357 S.E.2d at 397.

There is not a scintilla of competent evidence that either Edwin Reel, III, or Manager Jere Morton was authorized or directed by The American Legion or by the North Carolina Department to arrange transportation for, or to transport, team players to and from the baseball field. Furthermore, there is no evidence that Reel or Morton was an agent of these defendants by way of apparent authority. We also have determined that neither the American Legion nor the North Carolina Department was operating the baseball program. Thus, even assuming that Reel and Morton were somehow employees of The American Legion and the North Carolina Department, any negligence by Reel or Morton with respect to the transportation of players to and from the baseball field occurred outside the scope of their employment.

The evidence presented by The American Legion and the North Carolina Department established the lack of any genuine issue of material fact and that these defendants were entitled to judgment as a matter of law. Plaintiffs failed to rebut this evidence, and so summary judgment as to all claims properly was granted for The American Legion and the North Carolina Department. *See Felts v. Hoskins*, 115 N.C. App. 715, 717, 446 S.E.2d 110, 111 (1994).

## II. Cary Post 67

Plaintiffs' claims against Cary Post 67 essentially are identical to their claims against The American Legion and the North Carolina Department.

### A. Direct Negligence

[3] Plaintiffs urge that defendant Cary Post 67 was negligent in failing to have a transportation policy in place and in failing to provide transportation to and from the games. Direct negligence requires that the plaintiffs prove the following elements: a legal duty, a breach of that duty, and damages proximately caused by the breach. *See Tise v. Yates Constr. Co., Inc.*, 345 N.C. 456, 460, 480 S.E.2d 677, 680 (1997). Ordinarily, it is a jury's province to determine issues of breach and causation. *See Griggs v. Morehead Memorial Hosp.*, 82 N.C. App. 131, 132-33, 345 S.E.2d 430, 431 (1986). However, when the evidence viewed in the light most favorable to the non-moving party indicates that only one conclusion of law may reasonably be reached, summary judgment is proper. *See Thompson*, 122 N.C. App. at 344, 469 S.E.2d

at 585. When a defendant moves for summary judgment, it may meet its burden by showing either (1) that an essential element of the plaintiff's claim is missing as a matter of law, or (2) that the plaintiff "cannot produce evidence to support an essential element of his or her claim." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982).

We hold that summary judgment as to plaintiffs' claim of direct negligence was properly granted in favor of defendant Cary Post 67. There is no evidence forecast or in the record that tends to show that providing transportation is a duty inherent in operating a baseball program with reasonable care. Moreover, plaintiffs are unable to show as a matter of law that allowing Reel to drive was a proximate cause of the injuries suffered by plaintiffs.

We believe *Johnson v. Skinner*, 99 N.C. App. 1, 392 S.E.2d 634, *review on add'l issues denied*, 327 N.C. 429, 395 S.E.2d 680 (1990), is instructive. There, an injured motorist sued a car dealership that had allowed its mechanic to drive his uninsured car with its dealer license plates. The mechanic loaned his car to his roommate, who collided with plaintiff. Plaintiff sued the dealership that had illegally supplied the license plates under a theory that "motorists who are unable to register their vehicles are, as a class, a somewhat greater risk of injury to people on the highway than insured motorists." *Johnson*, 99 N.C. App. at 11, 392 S.E.2d at 639-40. This Court said that such a "theory of negligence gives us pause," *id.* at 11, 392 S.E.2d at 640, but found that the case was properly submitted to the jury on the issue of negligence of the dealership. The Court explained that submission was proper because the evidence indicated the dealership had specific knowledge that the roommate was allowed to drive the car and that the roommate "previously had used lack of care in driving the [car]." *Id.* at 12, 392 S.E.2d at 640. As such, the dealership's giving of the license plates to the mechanic was a proximate cause of the injuries because the dealership "should have foreseen a danger to other motorists" when it allowed its mechanic to use the dealer plates. *Id.* at 11, 392 S.E.2d at 640.

In this case, plaintiffs urge that defendant Cary Post 67 was negligent in allowing Reel to drive players because of his age and his excitability. In *Johnson*, although the theory of a general class of more dangerous drivers gave this Court "pause," the case properly went to the jury because the dealership possessed specific knowledge about the danger of the specific driver involved. In contrast,

Cary Post 67 had no knowledge of any history or record of unsafe driving by Reel; indeed, the team manager said Reel "had driven before and shown [himself] to be a safe, responsible driver." We are unwilling to say a bare allegation that a driver is young is enough to send the causation issue to the jury. Plaintiffs further allege that the game had been heated and so Cary Post 67 should have known Reel would be excitable. However, all persons present at the game saw the excitement, and many witnessed the altercation with a Chapel Hill parent afterwards. To say that Cary Post 67 should be on notice that all of these individuals were potentially dangerous drivers stretches the limits of foreseeability beyond reason. Because only one inference can be drawn from the facts at hand, we hold that summary judgment for defendant Cary Post 67 on the issue of direct negligence was proper. *See id.* at 7, 392 S.E.2d at 637.

### B. Vicarious Liability

[4] When a principal can control and direct his agent, *respondeat superior* imposes liability upon the principal for the torts of his agent. *See Peace River Elec. Coop., Inc. v. Ward Transformer Co., Inc.*, 116 N.C. App. 493, 504, 449 S.E.2d 202, 210 (1994), *disc. review denied*, 339 N.C. 739, 454 S.E.2d 655 (1995). Most commonly expressed in terms of employer-employee relationships, the theory imposes liability when the agent's actions within the scope of the employment and in furtherance of the master's business are expressly authorized or are performed with implied authority. *See Medlin v. Bass*, 327 N.C. 587, 592, 398 S.E.2d 460, 463 (1990). Although there can be an agency relationship only if the principal retains the right to control the manner of performance, *see Vaughn*, 296 N.C. at 686, 252 S.E.2d at 795, driving to or from a work site at the direction of an employer has been considered to be within the scope of employment and sufficient to subject an employer to vicarious liability for an employee's negligent driving. See *MGM Transport Corp. v. Cain*, 128 N.C. App. 428, 431, 496 S.E.2d 822, 824 (1998).

Viewing the evidence in the light most favorable to the plaintiffs, there is enough evidence forecast to submit the case to a jury on the issue of vicarious liability. Plaintiffs have alleged and presented evidence that the coaches were agents of Cary Post 67, which allegedly was operating the baseball team. As agents, the coaches may have enlisted Reel as an agent as well. Factual discrepancies exist as to the agency relationship(s), and as to whether providing transportation was within the scope of Cary Post 67's business in operating the team.

Because the factual questions of whether Reel was an agent of the team, and whether transportation was even within the scope of any agency, are disputed and are material to *respondeat superior* liability, they are matters properly left to a jury. *See Thompson*, 122 N.C. App. at 345-46, 469 S.E.2d at 586. We reverse the grant of summary judgment on the claim of vicarious liability and remand the issue for trial.

Affirmed in part and reversed in part.

Judges GREENE and HORTON concur.